## SUPREME COURT.

### In the matter of WALTER BAKER.

The superintendent of "The New York State Inebriate Asylum," who has " power to *receive and retain* all inebriates who enter said asylum either voluntarily or by the order of the committee of any habitual drunkard " (*Laws of 1857, vol.* 1 *p.* 431), has no right to keep a voluntary patient in the institution *by force;* although such patient on entering the institution signed the requisite *agreement* under the act to remain there for one year, which time has not expired.

No *contract* which deprives a person of his liberty can be specifically enforced by the judgment or order of a court; and as a general rule force cannot be used to compel any person to perform such contract.

In the matter of Walter Baker.

*At Chambers, Binghamton, September* 15, 1865.

ON *habeas corpus.* In the matter of Walter Baker, a voluntary patient in the N. Y. State Inebriate Asylum.

George Bartlett, Esq., presented a petition, duly verified, to RANSOM BALCOM, one of the justices of the supreme court, on which the said justice granted a writ of *habeas corpus,* directed to Doctor J. Edward Turner, superintendent of the New York State Inebriate Asylum, commanding him to have the body of Walter Baker forthwith before the said justice, at his chambers in Binghamton, together with the cause of his confinement or detention, &c. And the said J. Edward Turner did, on the day aforesaid, produce the body of said Baker before the said justice, at his chambers, and then and there made the following return to said writ, viz:

"STATE OF NEW YORK, BROOME COUNTY, ss. :

"The undersigned, J. Edward Turner, superintendent of the New York State Inebriate Asylum, hereby makes return to the annexed writ as follows : He states that he is the superintendent of the New York State Inebriate Asylum, and has the care and charge of all inebriates brought to the asylum building of said institution; that Walter Baker, named in said writ, placed himself as a patient in said institution under the care of said superintendent, on the 9th day of March, 1865, where said Baker has since remained, except he escaped a short time, and now remains as such patient, and said superintendent now detains him as such patient, and for no other cause ; that said Baker thus placed himself as such patient by instrument in writing signed by said Baker, of which the annexed is the original ; that said superintendent has said Baker before said judge, the judge issuing said writ, but claims that said Baker should be remanded to said institution under the charge and care thereof, and that said institution, through him as such superintendent, has now exclusive right to the person of said Walter, by force of the laws of

this state organizing the same, and the several acts amendatory thereof.

(Signed) " J. EDWARD TURNER."

The return was duly verified. The above mentioned agreement was as follows, to wit :

"I hereby agree to place myself under the control and medical treatment of the New York State Inebriate Asylum for the period of one year, to be governed by the rules and regulations of the said inebriate asylum. I also agree to pay for my medical treatment, board and nursing, the sum of twenty dollars per. week. I further agree to pay in advance for six months treatment, the sum of five hundred and twenty dollars ($520); also on the 9th day of September, 1865, the sum of five hundred and twenty dollars, being in full for medical traeatment, board and nursing, one year from date.     WALTER BAKER.

" Witness : J. EDWARD TURNER.

" Binghamton, March 9, 1865."

{ Five cent
  U. S. Revenue
  Stamp, cancelled. }

The return was accompanied by the rules and regulations of the asylum, which were shown to Baker at the time he became a voluntary patient in the asylum. One of the regulations was as follows :  " All patients who enter the New York State Inebriate Asylum, must be committed by the courts or sign a written contract to remain in said asylum for *one year*, to be governed by the rules and regulations of said asylum."

. It was conceded Baker was capable of making a valid contract when he entered the asylum, and no evidence was given to show he was not capable of managing his business affairs. It was also conceded that on the 9th day of September, 1865, Baker notified' the superintendent of the asylum he should not longer remain in the institution, or. pay for board or treatment there, and that he has since that

day been detained in the institution without his consent and against his will.   The case was argued by

GEORGE BARTLETT, *for Baker, and*
H. S. GRISWOLD, *for the superintendent of the asylum.*

After taking time to deliberate upon the case, Justice BALCOM delivered the following opinion :   The inebriate asylum was first incorporated by the name of " The United States Inebriate Asylum, for the reformation of the poor and destitute inebriate," but the name was subsequently changed by the legislature to that of " The New York State Inebriate Asylum."   It was provided by the act of 1857, that " said institution shall have power to *receive and retain* all inebriates who enter said asylum either voluntarily or by the order of the committee of any habitual drunkard " (*Laws of* 1857, *vol.* 1, *p.* 431, § 9), and this provision has not been repealed or altered.   All men are endowed by their Creator with the inalienable right to liberty ; and with certain exceptions no contract which deprives a person of his liberty can be specifically enforced by the judgment or order of a court that he shall specifically perform it ; and as a general rule force cannot be used to compel any person to perform such a contract.

Baker has not done any act by which he has forfeited his liberty, and I am of the opinion the contract he made with the inebriate asylum does not justify that institution in keeping him there by force.   He was a voluntary patient in the institution, and all the power the superintendent had under the laws for the government of the institution, was to " receive and retain " him so long as he was willing to remain.   No provision has been made for the arrest of any voluntary patient who leaves the institution, who is capable of taking care of himself, and of managing his own business affairs, and no principle of the common law

is applicable to such a person which justifies the arrest and detention of persons who are lost to self control.

If the legislature has the power to authorize the detention of patients in the asylum for a reasonable time, to be prescribed by statute, who go there voluntarily, and agree to remain there such a time, and to prescribe the manner they may be arrested and taken back to the institution, if they leave it before the expiration of such time, it has failed to pass a law which confers such authority. All statutes in restraint of liberty must be strictly construed. This is a principle which cannot be disregarded, and it must be applied in construing the authority conferred upon the inebriate asylum to " receive and retain " inebriates who enter it voluntarily. The power given to " retain " such patients, in my judgment, only confers the right upon the superintendent of the institution to keep them so long as they will voluntarily remain, and no longer.

My conlusion is, that the superintendent of the asylum has no right forcibly to retain Baker in the institution, and that an order should be made discharging him from the asylum unless he chooses to remain there voluntarily, and obey the rules and regulations of the institution.