## SUPREME COURT.

### IN THE MATTER OF ADRIAN JANES.

The act of 1865, " for the better regulation and discipline of the New York State Inebriate Asylum," violates the provision of the constitution of the United States and of this state, which declares *that no person shall be deprived of liberty without due process of law,* for the reason that it authorises the commitment for the term of one year, of persons, as inebriates and lost to self control, to the New York State Inebriate Asylum, upon *ex parte* affidavits, without any provision for an examination, on their own motion as to whether they were or are such inebriates, before some court or officer and a jury, where they could be heard in opposition to the charge that they are or were such inebriates.

*At the chambers of Justice* BALCOM, *Binghamton, March,* 1866.

In the matter of Adrian Janes.

ON *habeas corpus*, Adrian Janes was produced by Doctor J. Edward Turner, superintendent of the New York State Inebriate Asylum, before Justice BALCOM, at his chambers in Binghamton, in obedience to a writ of habeas corpus issued by said justice, and served on said Turner.

It appeared by the return to the writ, that Janes was received into the New York State Inebriate Asylum at Binghamton, as a patient, in November, 1865, and that he was sent there and detained therein by said superintendent, by the order and commitment of W. H. ROBERTSON, County Judge of Westchester county, which order and commitment were signed by said county judge and bore date the 27th day of October, 1865, and the same were in the words and figures following, to wit :

"In the matter of Adrian Janes, an inebriate : Application having been made to me to commit Adrian Janes, of the town of Morrisania, in the county of Westchester, as an inebriate to the New York State Inebriate Asylum, and the affidavit of Henry L. Horton, and that of Robert H. Melius, two respectable practicing physicians of said county, and the affidavit of Richard H. Tuler, and also that of John A. Hewry, two respectable citizens and freeholders of said county, having been presented and filed, showing that said Adrian Janes is lost to self control, unable from such inebriation to attend to business, and dangerous to remain at large, I do therefore order that the said Adrian Janes be committed as such inebriate to the New York State Inebriate Asylum, situate in the county of Broome, *until the examination now provided by law, but not to exceed the period of twelve months.*

" Given under my hand at White Plains, in the county of Westchester, this 27th day of October, 1865.

" W. H. ROBERTSON,

" Westchester County Judge."

Janes testified, that he did not have any notice of the proceedings before the county judge for his commitment,

and that he did not know that any proceedings were taken against him for that purpose, or that he was to be committed to the inebriate asylum until after he was left there by one of his sons and another person, whom he subsequently learned was an officer. He also testified, that no examination had been had since he was placed in the asylum, to determine whether he was an inebriate or lost to self control. He further testified, that no committee had been appointed of his person or estate, and that he was a member of the firm of Janes, Kirtland & Co., who have an iron foundry in Westchester county, and an office in New York city, which was quite a wealthy firm, and was composed of himself, his two sons and Charles A. Kirtland. Jones appeared like an intelligent business man, in good health.

It was not claimed that any proceedings had ever been taken for determining whether Janes was an inebriate or lost to self control, except those taken *ex parte* before the county judge, who committed him to the asylum.

The motion for his discharge from confinement in the asylum was argued by

> GEORGE BARTLETT, *Esq., and it was opposed by*
> Hon. HORACE S. GRISWOLD, *counsel for the asylum, and the superintendent thereof.*

The following opinion was delivered:

BALCOM, J. Power was conferred in 1857, upon the New York State Inebriate Asylum, " to receive and retain all inebriates who enter said asylum, either voluntarily or by the order of the committee of any habitual drunkard" (*Laws of* 1857, *vol.* 1, *p.* 431). And it was further provided, that " the committee of the person of any habitual drunkard, duly appointed under existing laws, may, in his or their discretion, commit such habitual drunkard to the custody of the trustees or other proper officers of said asylum,

there to remain until he shall be discharged therefrom by such committee" (*Laws of* 1857, *vol.* 1, *p.* 431).

By section four, of chapter 26 of the laws of 1865, "any justice of the supreme court, or the judge of the county in which any inebriate may reside, shall have power to commit such inebriate to the New York State Inebriate Asylum, upon the production and filing of affidavit or affidavits by two respectable practicing physicians and two respectable citizens, freeholders of such county, to the effect that such inebriate is lost to self control, unable, from such inebriation, to attend to business, or is thereby dangerous to remain at large. But such commitment shall be only until *the examination now provided by law shall have been held, and in no case for a longer period than one year*" (*Laws of* 1865, *p.* 427).

In determining whether the act of 1865 is constitutional, it is proper to refer to other laws respecting the supervision, care, custody and confinement of habitual drunkards, also of lunatics, and to the manner habitual drunkards and lunatics may be declared to be lunatics or such drunkards, and their rights in such proceedings.

Persons may be posted as habitual drunkards; but when a person is posted as an habitual drunkard by the overseers of the poor, by notice to dealers in spirituous liquors not to give or sell any such liquors to such drunkard, he may apply to a justice of the peace for process to summon a jury to try and determine such fact of drunkenness; and the manner such question shall be tried and determined is prescribed by statute (1 *R. S.* 636).

The overseers of the poor, and relatives or strangers to any person supposed to be an habitual drunkard, may apply to the county court or to the supreme court for the appointment of commissioners, and have the question determined by a jury, whether the person is such a drunkard. (2 *R. S.* 52; 2 *Barbour's Ch. Pr.* 226; *code*, § 30.)

When proceedings are taken to have a person declared

an habitual drunkard, he should have notice of the time and place the jury will meet to hear the evidence, and he may contest the question whether he is such a drunkard (2 *Barb. Ch. Pr.* 230), and if the jury find he is such a drunkard he may appeal, if the proceedings be in the county court (2 *R. S.* 53, § 6 ), or he may be permitted to traverse the inquisition finding him such a drunkard whichever of such courts the proceedings are in (*Id.* § 5 ; 2 *Barb. Ch. Pr.* 235), and such traverse shall be tried by a jury as issues in civil actions are tried.

But there is no law that authorises a person who is committed to the inebriate asylum by a judge, to have the question tried, whether he was an inebriate or was lost to self-control or was unable from inebriation to attend to business or was dangerous to remain at large when he was so committed to that institution. He is there without a hearing, by virtue of a commitment found upon *ex parte* affidavits, and he cannot apply for an examination touching the cause of his commitment, for the reason that no court or officer is authorized to hear it, or to conduct it, or to decide upon his application, whether he was or is such a drunkard or inebriate as the legislature have declared may be committed to the inebriate asylum by a judge.

The situation of Adrian Janes is this : He was committed by an order of the county judge of Westchester county, to the New York State Inebriate Asylum, "until the examination now provided by law, but not to exceed the period of twelve months." And there is no way provided by law by which he can hasten such examination ; and he must remain in the asylum until the end of the twelve months named, if his commitment was valid, unless his relatives or friends should institute proceedings in a county court or in the supreme court against him as an habitual drunkard.

It is probable his relatives or friends caused him to be

In the matter of Adrian Janes.

committed to the asylum, and there is no presumption that they will apply to any court for the appointment of commissioners to inquire whether he is an habitual drunkard. The just inference from the facts is that they believe he ought to be kept in the asylum.

Any person who is committed to the inebriate asylum by a judge, pursuant to the act of 1865 (*supra*), must remain there one year, though he was not a drunkard or addicted to the use of intoxicating liquor when he was committed, unless that act be unconstitutional or unless some relative or friend should apply for a commission and the appointment of commissioners to inquire whether he is an habitual drunkard.

Had the legislature the right to pass the act of 1865, and provide for an *ex parte* determination upon affidavits that a person is an inebriate, &c., and for his commitment without a hearing as an inebriate to the State Inebriate Asylum for the period of one year, or a period that may last one year, notwithstanding all he can do to the contrary ? In other words, is the act of 1865 constitutional ?

I should probably be constrained to hold, that that act is constitutional, if a person who is committed to the asylum by a judge, under and pursuant to the same, could cause a jury to be summoned and have the question respecting his drunkenness or inebriation tried immediately after his commitment. But I ought also to say the safer and more convenient course would be to have provision made for the determination of the charge of inebriation, &c., before a judge of the county, and perhaps a jury, where the alleged inebriate resides, and upon due notice to him, previous to committing him to the asylum as lost to self control by reason of inebriation, and for his discharge if not found to be in that condition. This would certainly be the better course ; for no person should have the stigma forced upon him of a committal to an inebriate asylum for a single moment, until he has had an opportu-

nity of being heard before a competent court or officer, and perhaps a jury, upon the question whether he be such a drunkard or such an inebriate, as the act, under consideration, declares may be committed to the State Inebriate Asylum by a judge ; nor until he be duly adjudged to be such a drunkard or such an inebriate. The liberties and reputations of some persons are in danger without some such legal safeguards.

There is considerable authority to show that drunkenness, if it be open and exposed to public view, is a misdemeanor by the common law. (*See Tipton* agt. *The State*, 2 *Yerger's Reps.* 542 ; *Barb. Ch. Pr.* 222 ; *Smith* agt. *The State*, 1 *Humphreys Rep.* 396 ; *The State* agt. *Waller*, 3 *Murphey's Rep.* 229 ; *Wharton's Am. Cr. Law*, 2d ed. 37 ; 2 *Bishop on Cr. Law*, 2d ed. § 265.) I have mentioned the fact that such drunkenness has been held to be an indictable offense to show the odium that attaches to inebriates who are adjudged to be lost to self-control and unable to attend to business by reason of inebriation, with the view of presenting the importance there is of allowing persons to be heard before they are adjudged to be such inebriates as may be sent to the State Inebriate Asylum.

The act of 1865 does not provide for giving notice to the alleged inebriate of any hearing upon the question whether he be an inebriate, &c., prior to his committal to the inebriate asylum by a judge ; nor is there any law that enables him, on his own motion, to obtain such a hearing before any officer or tribunal after his committal.

When a person is confined as a lunatic, pursuant to the Revised Statutes (1 *R. S.* 641, *Laws of* 1838, *p.* 187), he, or any friend in his behalf, may appeal to the county judge and have a jury to decide upon the fact of lunacy (*Laws of* 1842, *p.* 147, § 21 ; 2 *R. S.* 5th ed. 890).

But I am not prepared to say that persons may not be confined as lunatics or sent to the State Lunatic Asylum as lunatics, under the laws of 1842, (*supra*) without being

In the matter of Adrian Janes.

heard or having an opportunity of being heard on the question of their alleged insanity. But such an *ex parte* proceeding would violate the spirit of that law ; and I must say such an *ex parte* proceeding would be wrong, notwithstanding the great improbability there is of any sane person being confined as a lunatic or being sent to a lunatic asylum as insane. I think no person should be adjudged to be insane, or be confined as a lunatic, except, perhaps, temporarily, without having an opportunity of being heard on the question of his alleged insanity before a tribunal competent to decide it.

It is possible that sane persons may be confined in asylums or elsewhere, as lunatics, unless they can be heard on the question of their alleged insanity before some proper court or officer and a jury. I have read or heard of a case or two where such injustice has been done ; and I can imagine a member of a family bad enough, when influenced by sufficient motives, to procure the confinement of another member of the same family, as a lunatic or an inebriate, when there is no just cause therefor.

But whenever there is any such improper confinement of a sane person upon the pretence that he is a lunatic, he may require his liberty by habeas corpus. (*See* 3 *Hill's Rep.* note, *p.* 660.)

Lunatics may be rightfully restrained of their liberty without legal process and without the intervention of a committee, and they are not always to be let loose on habeas corpus when confined by strangers. But inebriates cannot be treated as lunatics, unless they are lunatics as well as inebriates ; and whoever confines an inebriate must do so by due process of law.

The constitution of the United States declares that no person shall " be deprived of life, liberty or property, without due process of law " ( 1 *R. S. p.* 18, *Art.* 5). A provision in the same words is contained in the constitution of this state (*Laws of* 1847, *vol.* 2, *p.* 386, § 6).

The meaning of the words "due process of law," as used in both constitutions, has been explained and defined by very able and learned judges. But I need only refer to some of the cases in which their opinions may be found. (*See Taylor* agt. *Porter*, 4 *Hill*, 140 ; *Dew* agt. *Hoboken Land and Improvement company*, 18 *How. U. S. Reps.* 272; *Wynehamer* agt. *The People*, 3 *Kernan*, 393 *to* 395.)

When a person is adjudged without being heard or having an opportunity of being heard, to be unfit for the enjoyment of the liberty to which all good citizens are entitled, and is thereupon committed to an asylum for a term which he cannot, on his own motion, have made less than one year, is he not deprived of his liberty without due process of law ? I answer he is ; and I am constrained to say that any act of the legislature that authorises *ex parte* proceedings, which result in depriving persons of their liberty for any considerable time without their being heard or having an opportunity of being heard, upon the accusation on which they are restrained of their liberty, is repugnant to the constitution of this state, and also that of the United States, and is therefore void.

The reasoning of Justice BRONSON, in *Taylor* agt. *Porter* (*supra*), shows that the words "due process of law," as used in our state and national constitutions, do not mean any process or proceedings the legislature may authorise which works the alleged wrong, but only such, if preliminary, as secures to persons a hearing within a reasonable time after their arrest or confinement, before a competent and proper court or officer, and in most cases, though not in all, before a jury, according to the course of the common law.

My conclusion is, that the act of 1865 (*supra*), violates the provisions of our national and state constitutions, which declares *that no person shall be deprived of liberty without due process of law* ; for the reason that it authorises the commitment, for the term of one year, of persons as inebriates

and lost to self control, to the New York State Inebriate Asylum, upon *ex parte* affidavits, without any provision for an examination, on their own motion, as to whether they were or are such inebriates, before some court or officer and a jury, where they could be heard in opposition to the charge that they were or are such inebriates.

It follows that Adrian Janes is confined in such asylum without due process of law, and that he is entitled to an order for his discharge from that institution.