(34 App. Div. 363.)

PEOPLE ex rel. ORDWAY v. ST. SAVIOUR'S SANITARIUM.

(Supreme Court, Appellate Division, First Department.    November 11, 1898.)

1. HABEAS CORPUS—JURISDICTION—RETURN—DEMURRER.
    Where defect of jurisdiction appears by the return in habeas corpus proceedings, the return may be attacked by demurrer.

2. DRUNKARDS—COMMITMENT—VALIDITY.
    The fact that an inebriate voluntarily surrendered herself to an asylum for treatment does not validate a commitment for a stated term, which is void as based on a proceeding had without notice.

3. SAME—NOTICE—DUE PROCESS OF LAW.
    Laws 1892, c. 467, § 2, authorizing St. Saviour's Sanitarium to receive and retain inebriate females committed to its custody, violates Const. art. 1, § 6, and Const. U. S. Amend. 14, forbidding deprivation of liberty without due process of law, in so far as it authorizes any judge of a court of record, without her presence or notice to her, to commit an alleged inebriate to the sanitarium for one year or less, in the discretion of the trustees, on an affidavit of physicians showing her to be incapable of conducting herself or her affairs, or dangerous to herself or others, by reason of periodical, frequent, or habitual drunkenness; and this, though section 3 provides that nothing in the act shall limit the right of courts to review by habeas corpus the detention of any person so committed.

4. SAME.
    The commitment was not valid as a temporary one, the act not authorizing any investigation after the commitment.

Appeal from special term.

Habeas corpus by the people, on the relation of Elizabeth Ordway, against St. Saviour's Sanitarium.    There was a judgment dismissing the writ, and relator appeals.    Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN, McLAUGHLIN, INGRAHAM, and PATTERSON, JJ.

A. H. Hummell, for relator.
John B. Pine, for respondent.

PATTERSON, J.    Appeal from an order made at the special term dismissing a writ of habeas corpus, and remanding the relator to the custody of the respondent.    In her petition for the writ, the relator set forth that she was unlawfully deprived of her liberty by the respondent, or its officers, and also stated jurisdictional and other facts which required that the writ be granted.    The respondent duly made a return, and set forth that it is a domestic corporation, incorporated and existing under and pursuant to a statute of the state of New York, and was authorized, by chapter 467 of the Laws of 1892, to receive and retain in its custody inebriate females who might voluntarily surrender themselves, or who might be committed to its custody as in said act provided.    It then alleged that it had the relator in its custody at the time the writ of habeas corpus was issued, and also at the time of the return thereto, and that such custody was had by virtue and authority of a commitment under and in conformity with the statute referred to, a copy of which is annexed to the return and made a part thereof.    It is further alleged in the return that the relator is and was detained for, and by reason of, the facts alleged and set forth in the commitment as the ground for her confinement and detention

as an inebriate, and for and on account of the further fact that the relator still continued to be incapable and unfit properly to conduct herself or her own private affairs by reason of a periodical, frequent, and constant habit of drunkenness, from which she had not yet so fully recovered as to be safely intrusted with her liberty, and that, in the judgment of the trustees of the respondent, it was necessary, for the welfare and protection of the relator and for her permanent cure, that she continue to remain under treatment and in restraint in the respondent's institution. The return then sets forth that the relator voluntarily applied for admission to said sanitarium, and placed herself therein of her own free will, under the commitment, after having been informed that such commitment was for the term of one year, as was shown by an affidavit annexed to the return and stated to be a part thereof.

The statute referred to is entitled "An act relating to Saint Saviour's Sanitarium and for the care of inebriate women." It confers upon a private corporation certain powers as to inebriate women, and also provides for certain procedure, pursuant to which commitments of such women to its care and custody may be made. By section 1 of the statute, the existence of the respondent is recognized as a corporation, and it is "authorized and empowered to receive and retain in its custody all such females as its trustees shall deem suitable subjects for its care who may voluntarily surrender themselves, or who may be committed to its custody in the manner and for the term hereinafter provided, or for so much of such term as may be necessary in the judgment of said trustees for treatment and reformation." By the first section there is a delegation of power to retain a person in the custody of the respondent either for a fixed term (which in another part of the statute is made one year under an original commitment), or for such less period as, in the discretion of the trustees of a private institution, may be necessary for the treatment and reformation of a person committed. By section 2 of the statute, any judge of a court of record in the county or district where an alleged inebriate female resides may commit her to the custody of the respondent, on the consent of the trustees, signed by their superintendent or executive officer, and upon a certificate in writing of two physicians, under oath, "showing that such female is over the age of eighteen years and is incapable or unfit to properly conduct herself or her own affairs, or is dangerous to herself or others by reason of habits of periodical, frequent or constant drunkenness induced either by the use of alcoholic or vinous or other liquors, or opium, morphine or other narcotic or intoxicating or stupefying substance." The section provides for certain qualifications of the physicians who may make the certificate, and then enacts that the judge or justice to whom such consent and certificates are presented may require affidavits to be submitted in support of the allegations contained in such certificate, or may institute an inquiry and take proof as to such facts before making a commitment. Section 3 of the statute provides that nothing therein contained shall be construed to limit the right of the courts to review, by habeas corpus, the detention of any person committed under the act.

Annexed to the return to the writ of habeas corpus, and forming

part thereof, are the affidavits of two qualified physicians. They contain statements which would bring relator within the description of a person who may be committed, under the terms of this act, to the custody of the respondent. There is also attached to the return an affidavit of a brother of the relator, setting forth additional facts, showing that she was an irresponsible person, and alleging that her restraint was necessary for her own protection. To the return is also annexed a commitment by a justice of the supreme court of the state of New York in the First judicial district, which recites that it had been proven to the satisfaction of such justice, by the affidavits of the two physicians and of the relator's brother, that the relator "is an inebriate, and is incapable and unfit to properly conduct herself or her own affairs, and is dangerous to herself and others, by reason of habits of periodical, frequent drunkenness, induced by the use of alcoholic stimulants, within the provisions of chapter 467 of the Laws of 1892, and is a suitable subject for the care of the corporation known as 'St. Saviour's Sanitarium' "; and thereupon the justice adjudged "that the said several allegations above set forth and stated to have been proven are true, and that the said female is embraced within the provisions of the statute aforesaid, and is a suitable subject for the care of said corporation." The commitment, which is directed to any of the policemen of the city of New York, then proceeds to command that the relator be arrested, and delivered to the respondent, "to be and remain in the custody, and under the care and control, of said corporation, for the term of one year from the date hereof, or for so much of said term as may be necessary, in the judgment of the trustees of said corporation, for treatment and reformation."

The relator demurred to the whole of the return, on the ground that all that is contained therein was insufficient in law to justify her further detention; that the commitment annexed to the return is insufficient in law, in that it fails to show that this petitioner was ever arraigned before the justice of the supreme court mentioned in the commitment, or that any witnesses were produced before the justice, or examined by him in the presence of the relator, or that the petitioner was a resident of the city of New York, or that she had any opportunity given her to deny the charges, or that any adjudication was made, after a hearing and examination of proofs, in the presence of the petitioner, or that in the affidavits of the physicians anything was shown or stated why or in what manner the petitioner was incapable or unfit properly to conduct herself or her affairs, or how she was dangerous to herself or others, or that the petitioner ever, by act of commission, did anything dangerous to herself or dangerous to others. In passing upon this demurrer, the justice at special term held that all the facts stated in the return being admitted, and it appearing that the relator, after notice and knowledge of the commitment, voluntarily had surrendered herself to the respondent, the writ should be dismissed, with permission to withdraw the demurrer and traverse the return.

Although the facts set forth in the return are, technically speaking, admitted by the demurrer, yet that demurrer is not addressed only to the specification of omissions in the commitment, or the fail-

ure to state in it that certain things were done, which it is claimed should have been recited to show jurisdiction. The demurrer states that the relator "hereby demurs to the said return, and says that the same is insufficient in law to justify her further detention." That general ground of demurrer strikes at the whole foundation of the original proceeding in which the relator was committed. The respondent specifically puts its right to retain the relator in custody on the provisions of the statute which it annexes to the return and makes part thereof, on the procedure had before the justice of the supreme court in pursuance of the provisions of the statute, on an adjudication made by the court pursuant to the provisions of the second section of the statute, on a commitment following that adjudication and not otherwise issued, and on the assent of the relator thereto by a voluntary surrender under final process. By the general ground of the demurrer the relator attacks the whole proceeding, claiming that it was from beginning to end an unlawful one, which she has a right to assail, not because of an erroneous adjudication, but for the reason that the court was without authority to make any adjudication; or, to state it differently, that the whole proceeding is void, as one conducted without due process of law, and shown in the return to have been instituted, carried on, and concluded without notice to her, without a hearing, and without her presence, and that it has eventuated in a judgment against her, condemning her to a year's confinement and restraint, unless it shall seem fit to certain trustees of a private corporation, in their discretion, sooner to release her from that restraint and confinement.

It is the established law of the state, respecting proceedings upon habeas corpus, that where it appears that a person is committed by a magistrate (People v. Protestant Episcopal House of Mercy of New York, 128 N. Y. 180, 28 N. E. 473), or detained by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon such judgment or decree, he must be remanded; but if a party is detained on process, the validity of which is brought into question on jurisdictional grounds, the right to contest that validity, whether upon a traverse to the return of a writ of habeas corpus, or by a demurrer to the return, exists. In People v. Liscomb, 60 N. Y. 571, it is said that, "if the process is valid on its face, it will be deemed prima facie legal, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction. Error, irregularity, or want of form is no objection, nor is any defect which may be amended or remedied by the court from which it issues. If there was no legal power to render the judgment or decree or issue the process, there was no competent court, and, consequently, no judgment or process. All is coram non judice and void." Where want of jurisdiction depends upon facts which do not appear in the return, it would be necessary to set up those facts by way of traverse, but, where they appear in the return, then the question of jurisdiction may properly be raised by demurrer, as presenting only an issue of law. The detained person then undertakes to show the want of jurisdiction or the invalidity of the proceeding from the rec-

ord itself upon which he was committed. In the return now before us, and the schedules annexed to it, it appears that the proceeding under which the relator was committed was had under a special act, the provisions of which authorize an ex parte judgment and a commitment in pursuance thereof; that this relator was committed under the authority of that act, and by a procedure which accords with that act, and which in its very nature shows that there was an ex parte judgment. That presents the question of the validity of the proceeding as being one inaugurated, conducted, and concluded without due process of law; for the commitment, as process, is shown by the return to have been the direct sequence of a proceeding begun and carried forward through all its stages in the manner above described. .

The statute under which this relator was committed separates into two groups those female inebriates who may be brought within its operation: First, those who voluntarily surrender themselves; and, second, those who are proceeded against in invitum. The return of the respondent is directed to showing that this relator comes within the operation of both these phases of the statute. That she did surrender herself, and that she did so with knowledge of the commitment, and of the period of time for which she was committed, and the conditions under which that commitment was issued, must be assumed. But by that surrender of her person to the custody of the respondent she did not bind herself to remain for any particular period. There is nothing in the nature of an enforceable contract by which she consented to deprive herself of her liberty for any fixed time. The statute, in effect, authorizes the respondent to receive voluntary patients for treatment. In considering this subject, Mr. Tiedeman, in his work on Limitations of Police Power (page 115), says: "Voluntary patients can, of course, be received, and be retained as long as they consent to remain. But they cannot be compelled to remain any longer than they desire, even though they have, upon entering the asylum, signed an agreement to remain for a specified time, and the time has not expired." That remark of the writer mentioned occurs in connection with the subject of the establishment in the state of New York of inebriate asylums, and was founded upon a decision made at a special term of the supreme court in 1865, by Mr. Justice Balcom. In re Baker, 29 How. Prac. 485. We have nothing to add to the reasoning (the soundness of which has never been impugned) of the learned justice in that case.

The surrender of the relator was a voluntary act. It was with knowledge of certain facts, but they cannot be regarded as a waiver of her right to withdraw when she pleased, nor estop her from reclaiming her liberty if she so desired; for her acquiescence in an unauthorized judgment (assuming, for the moment, that it was unauthorized) would have no more binding effect upon her than if she had signed a consent to remain in the institution for a fixed period.

Concerning these provisions of the statute under consideration which relate to the commitment, by adversary proceedings, of an inebriate female, it is to be remarked that only those women may be committed who are over 18 years of age, who are incapable and

unfit to conduct themselves or their own affairs properly, or who are dangerous to themselves or others, by reason of habits of drunkenness. It is very clear that the object and purpose of this act are not penal, but protective, but, in its effect, the same result is produced as if it were penal, namely, the deprivation of liberty of the person proceeded against.

No matter what may be the ostensible or real purpose in restraining a person of his liberty, whether it is to punish for an offense against the law, or to protect the person from himself, or the community, from apprehended acts, such restraint cannot be made permanent or of long continuance, unless by due process of law. Neither the constitution of the United States, in the fourteenth amendment, which operates upon the states, nor the constitution of the state of New York, has undertaken to define what "due process of law" is, and no definition by courts or writers has ever been so comprehensive as to indicate process fitted to every case that may arise, and, in the nature of things, such a definition cannot be formulated. We refer to that process by or under which a person is detained for a definite period of time, as in this case of one year, and not to that summary process which issues to take into custody a supposed or alleged dangerous or incompetent person, and under which he may be detained until an investigation, in the ordinary course of law, may be had. It is not open to contest that such temporary commitments of a summary character may be made ex parte, and in the exercise of the general police power of the state to arrest and temporarily confine dangerous persons. They are due process of law; but where a person is confined by what is, upon its face, final process, and by which he is consigned to incarceration or restraint of his person by adjudication for a long period,—that is to say, by a judgment claimed to be binding upon him,—there is not due process of law, unless he has had notice and a hearing, or, at least, such a hearing as implies notice. The observations of Judge Earl in the case of Stuart v. Palmer, 74 N. Y. 191, are as apt as anything that can be said upon this subject:

"It is difficult to define with precision the exact meaning and scope of the phrase 'due process of law.' Any definition which could be given would probably fail to comprehend all the cases to which it would apply. It is probably wiser, as recently stated by Mr. Justice Miller of the United States supreme court, to leave the meaning to be evolved 'by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.' Davidson v. City of New Orleans, 96 U. S. 104. It may, however, be stated, generally, that due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing, or an opportunity to be heard, is absolutely essential. We cannot conceive of due process of law without this."

In Bertholf v. O'Reilly, 74 N. Y. 519, Judge Andrews, in speaking for the court, says:

"We need not enter into any elaborate discussion of the meaning of the words 'due process of law.' This has been done in numerous judicial decisions. They are held, under the liberal interpretation given to them, to protect the life, liberty, and property of the citizens against acts of mere arbitrary

persons, in any department of the government. Denio, J., in Westervelt v. Gregg, 12 N. Y. 212. These are the fundamental civil rights for the security of which society is organized, and all acts of legislation which contravene them are within the prohibition of the constitutional guaranty. In judicial proceedings, due process of law requires notice, hearing, and judgment; in legislative proceedings, conformity to the settled maxims of free governments, observance of constitutional restraints and requirements, and an omission to exercise powers appertaining to the judicial or executive departments. It is as difficult as it would be unwise to attempt an exact definition of their scope."

While it is thus incontestable that, as a general rule, there cannot be due process of law without notice, hearing, and judgment, the point is made that with respect to incompetent or helpless persons the state is possessed of power as parens patriæ, and with regard to dangerous persons it also has authority to take them into its custody and care, for their own protection or the safety of society. Neither the fourteenth amendment of the constitution of the United States, nor section 6 of article 1 of the constitution of the state of New York, was designed to interfere with the legitimate exercise of that function of state government which, for want of a better name, is called the "police power." Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273; People v. Ewer, 141 N. Y. 129, 36 N. E. 4. That power may be exerted for the protection of the public health, morals, or safety, and the legislature may pass laws to attain these objects, even if sometimes they involve temporary restraint of the person, without notice or hearing, as in the case suggested in Re Doyle, 16 R. I. 539, 18 Atl. 159, of lunatics "who are dangerous to themselves or others　*　*　*　in the dangerous periods of their lunacy," or the destruction of property without notice or hearing, as in the suppression of a nuisance, as was held in Copcutt v. Board, 140 N. Y. 1, 35 N. E. 320. In either case, summary and ex parte action is necessary for the public safety. But the statute now under consideration goes far beyond the condition of dangerous. It subjects the person to restraint, not during periods of danger, but for a year, if a judge so orders, and for "treatment and reformation." As to harmless lunatics, idiots, and habitual drunkards, generally, the laws of this state provide adequately for notice and hearing before there can be restraint of their persons or sequestration of their property. What reason exists why a person alleged to be incompetent or dangerous should not have an opportunity, before judgment finally passes against him confining him for a long period, which he cannot shorten, to contest the charge, as much as a person accused of crime? The rights of one are as sacred and inviolable as of the other. Some proof of a prima facie case must be made before an arrest is authorized. An alleged criminal is hedged about with safeguards and protections. Why should not an alleged incompetent or dangerous person receive the same protection? Shall ex parte proof that would only avail to hold an alleged criminal for trial be regarded as conclusive proof against a supposed unfortunate? Constitutional immunities are precisely the same as to each. Again, we wish to be understood as speaking only of process issued on final adjudication,

and repeat that temporary summary commitments are just as valid in the case of alleged incompetents and dangerous persons as they are in the case of alleged criminals who are held in confinement, if not bailed, until they may be put upon trial. The constitutional provisions do not exclude proper and reasonable police laws and regulations, but acts of the legislature which go beyond the allowance of temporary confinement and restraint, until trial or hearing may be had, and the accused person have his day in court, in some way customary or adequate to enable him to present his case, are invalid exercises of legislative power.

The main question presented by this appeal was substantially before the supreme court at special term in Re Janes, 30 How. Prac. 446, a case which is cited as authority by almost every writer who treats of the subject and by courts of high authority in other jurisdictions. Mr. Tiedeman, in his work above referred to (page 116), has based upon it the statement that, in all "cases of forcible restraint of inebriates, the restraint is unlawful except temporarily to avert a threatening injury to others, unless it rests upon the judgment of a court rendered after a full hearing of the cause. The commitment on ex parte affidavits would be in violation of the general constitutional provision that no man can be deprived of his liberty except by due process of law." In Evans v. Johnson (W. Va.) 19 S. E. 623, the Janes Case is cited by the court. It came up on a writ of habeas corpus, and it appeared that the relator was committed to the New York State Inebriate Asylum upon an ex parte proceeding quite similar to that in the present case; that is to say, there was neither notice nor hearing. He was committed as one "lost to self-control," and "dangerous to remain at large," as was recited in the commitment. The supreme court held that such commitment was not due process of law, and violated the constitutional provision securing personal liberty. We are not called upon to approve everything that was said in the opinion of the learned justice who decided the Janes Case, but his general reasoning is convincing, if, indeed, it requires any argument to show that a person deprived of his liberty by judgment of a court for a year, or what may be a lesser period, according to the caprice of other private individuals, without a hearing, is not confined by due process of law. It surely cannot be said that the procedure authorized by the act under which this relator was committed, and which created the wrong, is due process of law, because the legislature chose to authorize that procedure. Taylor v. Porter, 4 Hill, 140.

We are of opinion that the commitment under which this relator is held is not due process of law, and that proceedings under the act, so far as they result in restraint for a year or a less period, depending upon discretion of those who detain the relator, are invalid, for the reason that no notice was given by which she might in the proceeding itself, by immediate intervention or subsequent opportunity to intervene, be heard in resistance of the accusation made against her. Had there been a hearing or notice, the question would not arise. The situation is not saved by that section of the statute which declares that nothing contained in the act shall be construed

to limit the power of the courts on habeas corpus. That is a remedy which the relator would have, in any event. The statute gave her in that regard no right she did not possess in common with every other person within the boundaries of the state of New York. "Due process of law" means process in the proceeding in which judgment is rendered against a person. It is in that proceeding, at some stage before final judgment, that she must have notice, or, at all events, a hearing, before she is condemned to long imprisonment or restraint. The writ of habeas corpus is not a writ of error (People v. Cassels, 5 Hill, 164), and section 3 of the act under consideration does not enlarge the scope or office of that writ.

It might be sufficient for the disposition of this particular case that the discussion should end here, but the learned counsel for the respondent, who has treated it very fairly and without any effort to evade the exact and important point in controversy, has suggested that the commitment is valid as a temporary one, and that proceedings may be entertained to investigate the condition of the relator, but such procedure is not admissible in this case. There is no authority on this record to hold this relator, except under the provisions of chapter 467 of the Laws of 1892. No investigation after commitment is authorized by that statute. The action of the court was only based upon the provisions of that law. The question is not presented of an excessive exercise of lawfully conferred or acquired jurisdiction, nor can authority to commit be drawn into the case from provisions of other statutes which relate to alleged incompetent or dangerous persons. Upon a full consideration of the whole case, we think the order appealed from dismissing the writ was erroneously made, and that the relator was entitled to a discharge.

The order must be reversed, with $10 costs and disbursements, the demurrer to the return sustained, and the relator discharged from the custody of the respondent. All concur.