## In re KENNY.

(Supreme Court, Special Term, Kings County.    March 1, 1898.)

CONSTITUTIONAL LAW—ISSUE OF PRIOR CONVICTION—HEARING.

Laws 1896, c. 378, §§ 707, 711, making the term of imprisonment of a person committed to the workhouse for public intoxication to depend upon the determination of the workhouse superintendent and commissioner of correction whether he has previously been convicted of a like offense, without giving him an opportunity to be heard thereon, deprive him of liberty without due process of law, within Const. art. 1, § 6 (Const. U. S. art. 14).

Teresa Kenny applies for a writ of habeas corpus.    Allowed.

The petitioner has sued out the writ of habeas corpus, claiming to be illegally detained by the sheriff of Kings county.    The sheriff makes return that he has the petitioner under a warrant of commitment by Jacob Brenner, Esq., a magistrate of the city of New York in the borough of Brooklyn.    Such commitment, after reciting that the petitioner was convicted before the said magistrate of public intoxication, commands in substance that she be imprisoned in the workhouse of the said city and there detained until discharged pursuant to sections 710 and 711 of the city charter, but that such detention shall not exceed six months from the date of the commitment.    To this return the petitioner demurs.

John B. Shanahan, for petitioner.
William Van Wyck, Asst. Dist. Atty., opposed.

GAYNOR, J.    The petitioner asserts the constitutional invalidity of·the statute under which she was convicted and is held.    The statute is very crude and involved.    After some difficulty it is found to provide (Laws 1896, c. 378, § 707) that upon conviction for "public intoxication, disorderly conduct or vagrancy, the court or magistrate before whom such conviction is had" shall commit the person convicted to the city workhouse or to a county jail, "to be detained until discharged pursuant to sections 710 and 711 of this act, and for a term not exceeding six months from the date of such commitment, and the warrant of commitment shall so recite"; except that if the conviction be for "public intoxication or disorderly conduct," such court or magistrate may impose a fine not exceeding ten dollars, upon payment of which the convicted person shall be forthwith discharged; and if such fine do not exceed two dollars, and be not paid, he shall be detained in the jail one day for each dollar; but if it exceed that sum, and be not paid by 5 o'clock of the afternoon of the next day after commitment, he shall be transferred from the jail to the workhouse, and be there detained until discharged under the said sections 710 and 711, but not exceeding six months, all as already specified in the case of one committed without fine.    Thus, whether committed to the workhouse in either of the two ways, viz., without fine, or in default of payment of a fine, the convicted person is in the same predicament, viz., he can regain his liberty only when discharged pursuant to the said sections 710 and 711.    This petitioner was committed without a fine.

We are next to see how such discharge from imprisonment is brought about.    Section 708 requires the superintendent of such workhouse·"to ascertain from the records thereof, and from examination and inspection of the person committed," whether he has within two

years been committed to such institution "upon conviction of public
intoxication, disorderly conduct or vagrancy"; and to transmit within
24 hours thereafter to the head of the department of correction of the
city of New York, viz., the "commissioner of correction," "a written
statement showing the name, age, sex, residence, occupation, height,
weight and the color of the hair of such person, and describing any
scars, marks or deformities or other signs whereby such person may
subsequently be identified"; also showing "the date of the commit-
ment, the offence for which such person was committed, and the name
of the magistrate by whom the commitment was made"; also whether
such person has been previously committed to such institution within
the said period "for any one of the causes above specified," and if so
the number of times, the date of the last previous commitment, the
name of the magistrate who made it and the period of actual deten-
tion under it.    Section 709 requires the commissioner of correction to
record all of these particulars in books which are declared to be
public records, and directed to be "indexed and kept so as to show
whether any person committed" to the workhouse, as aforesaid, "has
been previously committed within two years next preceding such
commitment" for any of the said causes.    Section 710 provides that
within three days after such commitment of any person to the work-
house, "it shall be the duty of the commissioner to ascertain from the
aforesaid records whether such person has been committed to the
workhouse" within two years previous to the date of such last com-
mitment, for any of the said causes, and to thereupon "make a writ-
ten order specifying the date at which such person shall be discharged."
It then provides for graduated terms of imprisonment to be so fixed
by the commissioner by such order in each case, according to the num-
ber of times the person has been so committed; the lowest term pre-
scribed being five days for a person not previously committed, the next
being twenty days for a person previously committed once, and each
successive term for a person previously committed twice or more with-
in the two-years limit, to be double his last preceding term, but in no
case to exceed six months; except that under a commitment for
vagrancy, such graduation may in all cases be departed from, by fixing
any longer term than the graded term, not exceeding six months.
The commissioner of correction is directed to transmit the said order
fixing the term to the superintendent of the workhouse, having first
entered its date, the name of the person mentioned therein, and the
period of his detention, in the aforesaid records.    Section 711 gives to
the magistrate who signed the commitment, power to discharge a per-
son whose term has been so fixed at more than 20 but less than 160
days, provided he has served 20 days, but only upon an affidavit of facts
which, in his opinion, shall justify such discharge.

Such is the scheme of the statute.    To briefly summarize it, this pe-
titioner having been committed to the workhouse, the superintendent
thereof has to "ascertain" whether she was ever there under com-
mitment for public intoxication, disorderly conduct or as a vagrant
before, within the preceding two years.    He has to make such de-
termination from an examination of the records of the workhouse,
and an "examination and inspection" of the person committed; in

other words, he is to base his decision upon an apparent identity, or lack of identity, of name, or of personal description, or of both, between the person committed and some former prisoner, with all the possibility or likelihood of error from assumed names, and similarity of points and marks of personal description. Then such superintendent has to make and transmit to the commissioner of correction a "written statement" of such identity, if it be found, and containing in every case a minute description by sex, age, weight, height, color of hair, marks, scars, and so on, of the person committed. And then comes the final determination in respect of identity of the person committed with some former prisoner, viz., the said commissioner of correction has to "ascertain" the fact from the said records in his office which the statute requires him to make up from such "written statements" from the superintendent of the workhouse; and having made his determination in respect of identity, he then has to make an "order" fixing the term of imprisonment in accordance with the fact so found, as prescribed by the statute, and transmit such order to the superintendent of the workhouse, who must hold the prisoner for such term. The magistrate or court has no power to, and does not sentence and commit the convicted person for a term of six months, and such person cannot be held under the commitment for six months, but only for the term fixed by the said order of the commissioner of correction. If the commissioner should fail to make such order, the prisoner could not be held thereafter longer than the five days prescribed in the act for a first offender, if at all. The warrant of commitment is effectual to detain the prisoner only during the time allowed to the commissioner for the fixing of the term, or at all events only during the five days term of a first offender. To sum up all, the term of imprisonment of the person committed is made by the statute to depend upon whether the superintendent of the workhouse, and finally the commissioner of correction, shall decide that such person is identical with some former prisoner; and the statute allows such determination of fact to be made without requiring any notice of hearing to such person, and opportunity to be heard thereon.

It seems to me that this statute is violative of the prohibitions of the federal and state constitutions, against depriving any person of "life, liberty or property without due process of law." Const. U. S. art. 14; Const. N. Y. art. 1, § 6. There is no such thing as due process of law without notice of hearing to the person to be affected in his rights, and opportunity to be heard thereunder. Even in the apportioning and levying of a tax or assessment upon property, if the statute providing for it does not require a hearing thereon, upon due notice, of the persons whose property is to be affected, it is void. Stuart v. Palmer, 74 N. Y. 183; Remsen v. Wheeler, 105 N. Y. 573, 12 N. E. 564; In re Trustees of Union College, 129 N. Y. 308, 29 N. E. 460. The application of this constitutional guaranty to the protection of the liberty of the individual is not less plain. City of Portland v. City of Bangor, 65 Me. 120; State v. Billings, 55 Minn. 468, 57 N. W. 206, 794. In order to hold the petitioner more than five days under this commitment (that being the term prescribed under a first commitment), the statute in question empowers the superintendent of the

workhouse, and then the commissioner of correction, to determine, without providing for any hearing to her, that she is identical with a person who has served one or more former terms in the workhouse, and then to punish her by depriving her of her liberty for a term prescribed for such an habitual offender. It thus plainly allows her to be punished, not for the offense she was convicted of before the magistrate, but for being a former offender, without requiring that she have opportunity to be heard on the question of fact whether she is such an offender. This is depriving her of her liberty without due process of law.

Some elucidation of the subject by way of analogy may be had by reference to our statute provisions for increased punishment to second offenders. Pen. Code, §§ 688–690. Though they only prescribe such increased punishment, and say nothing about charging the fact of a conviction for a former offense in the indictment, it has always been the practice, and it is held necessary, to so charge and prove it, in order to convict, and enable the court to inflict the increased punishment; which indicates that it has always been the opinion that the defendant is entitled to a constitutional trial of the question of former conviction. People v. Youngs, 1 Caines, 37; Wood v. People, 53 N. Y. 511; Johnson v. People, 55 N. Y. 512. The statute under which the state reformatory at Elmira is conducted (Laws 1887, c. 711) does not furnish any analogy, for the term of imprisonment is fixed by it in every case (section 9), only power to the managers to release before the expiration of such term in cases where a permanent reformation has been effected being given (section 14). And the same is the case with the other statutes establishing reformatories or houses of refuge, so far as I have examined; whereas, in addition to the maximum punishment allowed by the statute now in question, for the conviction itself, viz., a fine of $10, or imprisonment for five days, power to add to such imprisonment is given to the prison officials, upon their determination as a fact that the prisoner has been previously committed to the workhouse under the said statute. The sections of the statute which have been cited create one scheme, and if such scheme be invalid, there is no part or provision of the said sections which is so independent of them that it can be presumed that the legislature would have passed it alone, and that may be disconnected and survive alone. People v. Kenney, 96 N. Y. 302; Lawton v. Steele, 119 N. Y. 241, 23 N. E. 878; Warren v. Mayor, etc., 2 Gray, 84; Pollock v. Trust Co., 158 U. S. 601, 15 Sup. Ct. 912.

Entertaining these views, it is my duty to discharge the petitioner, for she is probably unable to stand the expense of an appeal; but if an appeal be taken by the district attorney, it should be brought on by consent of the petitioner's counsel at once, in order to prevent protracted uncertainty in the administration of justice before the magistrates.