(77 App. Div. 245.)

PEOPLE ex rel. ABRAMS v. FOX, Warden of Workhouse.

(Supreme Court, Appellate Division, First Department. December 5, 1902.)

1. VAGRANCY—SENTENCE—TERM OF COMMITMENT—CONSTITUTIONAL LAW.

Greater New York Charter 1901, § 707, provides that persons convicted of vagrancy shall be sentenced to the workhouse for a term of six months. Section 708 requires the superintendent of the workhouse to transmit to the commissioner of correction within 24 hours after the commitment of any person as a vagrant a description of such person, the date of commitment, etc.; also a statement as to whether or not he has been previously committed within two years. Section 709 requires the commissioner to record the contents of all reports thus made. Section 710 requires him, within three days after such commitment, to ascertain from these records whether the person has been previously committed within two years, and to make an order that he be discharged at the expiration of five days from the date of commitment, if it is a first offense; twenty days, if it be a second; and, if there have been two or more previous convictions within such period, "at the expiration of a period equal to twice the term of his detention under the last previous commitment, but not in any event exceeding the period fixed by the warrant of commitment": provided, however, that no order for discharge before the expiration of the period fixed in the warrant shall be made without the written consent indorsed thereon of the committing magistrate. It is further provided that, if the records disclose a previous conviction, the warden shall serve notice on the prisoner, who is given an opportunity to be heard if he disputes the fact of previous conviction, etc. *Held* constitutional, the provisions recited not rendering the sentence void for uncertainty, or disproportionate to the offense.

Appeal from special term, New York county.

Habeas corpus by the people of the state of New York, on the relation of Moses Abrams, against Frank W. Fox, warden of the workhouse. Order sustaining the writ and discharging the relator from the custody of the warden, and the latter appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Robert C. Taylor, for appellant.
Alexander Bloch, for respondent.

LAUGHLIN, J. On the 5th day of May, 1902, the relator was duly arraigned and tried before one of the city magistrates on the

charge of being a vagrant. He was convicted and sentenced to the workhouse pursuant to the provisions of sections 707 to 710, inclusive, and 712, of the Greater New York charter, "for the term of six months, unless sooner discharged by due course of law." The proceedings were had in conformity with the statute; and the sole ground upon which the relator was discharged, and upon which it is sought to sustain the discharge upon this appeal, is that the provisions of these sections of the charter, in so far as they relate to the sentence, term of imprisonment, and discharge of persons convicted of vagrancy, are unconstitutional and void.

The original provisions of the corresponding sections of the charter were a substantial re-enactment of chapter 237 of the Laws of 1895, as amended by chapter 886 of the Laws of 1896. The purpose of the legislature seems to have been to provide that the term of detention of persons convicted of public intoxication, disorderly conduct, and vagrancy, in this city, should depend on whether there has been a previous conviction, and on the number of such convictions. Recognizing the difficulty of ascertaining the facts in this regard in the magistrate's court at the time of conviction, it was provided originally that the sentence for vagrancy should be "for a term not exceeding six months from the date of such commitment, and the warrant of commitment shall so recite." Section 707, Greater New York Charter 1897. It then became the duty of the commissioner of correction within three days after the commitment to ascertain from the records whether the person so convicted had been previously committed to the workhouse within two years, and to make an order specifying the date upon which he should be discharged. In cases of first convictions it was provided that such order should direct their discharge "at the expiration of five days" from the date of their commitment; in cases of second offenses, at the expiration of twenty days; and, in cases of two or more previous convictions, "at the expiration of a period equal to twice the term" of the detention "under the last previous commitment but not in any event exceeding six months." In cases of vagrancy this was qualified by another provision to the effect that the order of the commissioner might direct that a person convicted of vagrancy be discharged "at the expiration of a period to be fixed" by him, and stated therein, "not exceeding six months and not less than the period of detention" therein specified for first and subsequent commitments, as the case might be. Section 710, Greater New York Charter 1897. Section 711 provided that where the "period of detention as fixed by the commissioner should exceed twenty days and should be less than 160 days, the magistrate who signed the last warrant of commitment, may, after the expiration of twenty days, direct the discharge of any person so committed." Sentences under these provisions were declared unconstitutional on the ground that the sentence "for a term not exceeding six months" was too indefinite, and that the term of sentence was, in effect, left to the commissioner of correction to prescribe, by an order concerning which the prisoner was given no hearing, or opportunity to be heard. In re Kenny, 23 Misc. Rep. 9, 49 N. Y. Supp. 1037, affirmed in 30 App. Div. 624, 53 N. Y. Supp. 1111. The legislature, still recognizing the difficulty of

ascertaining the facts with reference to the previous conviction at the time of imposing sentence, and still deeming that the term of imprisonment should depend on the prisoner's previous record, attempted, by amendments to these sections, to obviate the constitutional objections thereto pointed out by the decision in the Kenny Case. It is provided in section 707 of the Greater New York charter for 1901 that all persons convicted of vagrancy, with certain exceptions, not material to be considered, in the boroughs of Manhattan and the Bronx, should be sentenced to the workhouse on Blackwell's Island "for a term of six months." The conviction and sentence of the relator were under this statute.

It is made the duty of the superintendent of the workhouse, under section 708 of the charter of 1901,—and this provision is the same as that contained in the charter of 1897,—to transmit to the commissioner of correction, within 24 hours after the commitment of any person to the workhouse as a vagrant, "a written statement showing the name, sex, residence, occupation, height, weight and the color of hair of any such person, and describing any scars, marks or deformities or other signs whereby such person might subsequently be identified, the date of the commitment, the offense for which such person was committed, and the name of the magistrate by whom such commitment was made." It is also the duty of such superintendent "to ascertain from the records," and "from examination and inspection of the person committed," whether the prisoner has been previously committed to the workhouse on a conviction of public intoxication, disorderly conduct, or vagrancy, within two years, and to show the fact, stating the number of such convictions, the date of the last previous commitment, the name of the magistrate by whom and the offense for which the last previous commitment was made, and the period of detention thereunder, in the statement which he is required to transmit to the commissioner of correction within 24 hours after the commitment. Section 709 requires the commissioner to record in books of record to be kept in his office the contents of all reports thus made to him by the superintendent of the workhouse. By section 710 of the charter of 1901 it is made the duty of the commissioner—the same as under the charter of 1897—to ascertain from these records, within three days after the commitment of any person upon a conviction of vagrancy, whether such person has previously been committed to the workhouse within two years upon conviction for public intoxication, disorderly conduct, or vagrancy, and to make an order that he be discharged at the expiration of five days from the date of his commitment if it be a first offense; at the expiration of 20 days if it be a second offense; and, if there have been two or more previous convictions within such period, "at the expiration of a period equal to twice the term of his detention under the last previous commitment, but not in any event exceeding the period fixed by the warrant of commitment. It is further provided that, in case of a person committed upon conviction of vagrancy, no order for his discharge before the period fixed by the warrant of commitment shall be made without the written consent indorsed thereon of the magistrate who committed him. It thus appears that no person convicted of vagrancy could be discharged before

serving the full term for which he was sentenced, unless with the approval of the committing magistrate, and that it was the intention of the legislature to confine the prisoner, in any event, until the expiration of the fifth day after the date of his imprisonment. Accordingly, where no previous conviction was found, there could be no mistake to the prejudice of the prisoner, and the proceedings were entirely ex parte. But where the records disclose a previous conviction of a person by the same name, and answering the same general description, and ascertained ex parte and recited in the order of the commissioner to be the prisoner, the warden is required to serve a copy of the order and of section 710 of the charter on the prisoner within 24 hours of the making of the order by the commissioner. It is then provided that the prisoner may, if he disputes that he has been previously convicted as recited in the order, within 24 hours notify the warden, in writing, that he claims the date of the discharge named in the order to be erroneous, for the reason that he has not, in fact, previously been convicted upon one or more of the dates specified therein. The warden, upon receiving such notification, is required to cause the prisoner to be taken before the magistrate who committed him, or, in his absence, before any magistrate sitting in the borough. The prisoner is entitled to 24 hours' notice of being taken before the magistrate, and to an opportunity to retain counsel and subpœna witnesses. The magistrate is then authorized "to hear and determine" the uncontroverted facts, and to modify the order made by the commissioner according to such determination. If the facts recited in the order are found to be true, the court or magistrate is required to make a written finding to that effect; and in consequence of making a false claim, and unsuccessfully contesting the question, it is provided that the prisoner shall be detained until the expiration of the period fixed in the warrant of commitment. It is evident that if the commissioner of corrections and the warden or superintendent of the workhouse perform their duties promptly, as the legislature contemplated, and if the prisoner so desires, under these provisions he will be given an opportunity to be heard by a court or magistrate on the question as to whether he has been previously committed as recited in the order made by the commissioner before the expiration of the fifth day from the date of his commitment. In that event, if he should be successful in his contention that he had not been previously convicted for any of the offenses or within the period specified, he would have the order corrected by the time he would have been entitled to be discharged, had it recited no previous conviction, and directed his discharge at the expiration of the fifth day after his commitment. There can be no question but that it was competent for the legislature to prescribe a flat sentence of six months for such offenses, but the statute indicates that it was the intention of the legislature to have the prisoner, after being thus sentenced, discharged at an earlier period, provided the committing magistrate approved thereof; the date of such discharge depending on the question as to whether he had been previously convicted of any of the offenses specified within the period mentioned, and how often. The legislature has emphasized its approval of this system of punishment, and has, in

effect, declared that, in its wisdom, it is impracticable to determine the facts with reference to the previous conviction at the time of imposing sentence. If, therefore, the method and agencies it has provided and employed for the purpose of giving the defendant a hearing in case he disputes the fact as found by the commissioner with reference to a previous conviction should result in his detention beyond the fifth day of his commitment, still we think that was within the legislative discretion. All of these provisions for an earlier discharge than that fixed in the warrant of commitment are for the benefit of the prisoner. No substantial right of the prisoner is invaded. The legislature might have omitted any or all of them. The judicial functions are fully left to the court. The trial, conviction, and sentence are unquestionably legal. The law should not be upset because possibly the commissioner may err in ascertaining the fact with reference to a previous conviction of the prisoner, or because either he or the warden may not promptly and faithfully discharge the duties which the legislature has devolved upon them with reference to bringing about an earlier discharge of the prisoner, depending upon his previous good record. These provisions neither render the sentence void for uncertainty, nor disproportionate to the offense. People v. Illinois State Reformatory, 143 Ill. 413, 36 N. E. 76, 23 L. R. A. 139. We are of the opinion, therefore, that the constitutional objections to the original law have been fully obviated.

It follows that the order should be reversed, the proceedings dismissed, and the relator remanded to the custody of the warden under the warrant of commitment. All concur.