PEOPLE ex rel. BARONE v. FOX, Warden of the Workhouse.

(Supreme Court, Appellate Division, First Department. May 12, 1911.)

1. CONSTITUTIONAL LAW (§ 270*)—DUE PROCESS OF LAW.

Laws 1910, c. 659, relates to the inferior criminal courts of New York City, and section 88 provides that, if one convicted of vagrancy be a prostitute between the ages of 16 and 21, the magistrate may commit her to certain institutions for not over one year, and all others convicted, including persons convicted as prostitutes, except those committed under section 79, and not committed to a reformatory as provided, shall be committed to the workhouse, etc., for six months. Section 79 provides that one who is a vagrant within Code Civ. Proc. § 887, subdiv. 4, or who is convicted of a violation of Consolidation Act (Laws 1882, c. 410) § 1458, subd. 2, shall, after conviction, be physically examined by a woman physician, who shall make a written report of the prisoner's physical condition, and, if it appears therefrom that she has any infectious venereal disease, the magistrate shall commit her to a public hospital for detention and treatment for a minimum period fixed and a maximum period of not over one year, provided that if the prisoner be cured after the minimum period, and within the maximum period, she shall be discharged; but, if cured before the minimum period expires, she shall be transferred to the workhouse and discharged at its expiration. Code Civ. Proc. § 887, subd. 3, provides that one who has contracted an infectious disease by debauchery, requiring charitable aid to restore health, is a vagrant, and subdivision 4 makes a common prostitute, without lawful employment to maintain herself, a vagrant. Consolidation Act, § 1458, makes a common prostitute, loitering or soliciting in a public place, a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

disorderly person. *Held*, that one charged as a disorderly person under section 1458 and committed to a public hospital after having been examined by a physician pursuant to section 79, and found to have a contagious venereal disease, for not over 12 months, or until the disease was cured, was not deprived of her liberty without due process of law, on the ground that the sentence imposed at the conviction depended upon the report of the physical examination without opportunity for hearing upon the facts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 758; Dec. Dig. § 270.*]

2. STATUTES (§ 227*)—MANDATORY STATUTES—"SHALL."

The mandatory word "shall" may often be treated as merely permissive, when necessary to sustain a statute or accomplish its purpose.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 309; Dec. Dig. § 227.*

For other definitions, see Words and Phrases, vol. 7, pp. 6459–6469; vol. 8, p. 7799.]

3. CONSTITUTIONAL LAW (§ 250*)—EQUAL PROTECTION OF LAW.

The act of 1910 is not class legislation, so as to deprive one committed thereunder of the equal protection of the law, being a proper exercise of the police power.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 711–713; Dec. Dig. § 250.*]

Clarke and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Application for mandamus by the People, on the relation of Adelina Barone, against Frank Fox, Warden of the Workhouse. From an order discharging relator from custody (127 N. Y. Supp. 484), the People appeal. Reversed, suit dismissed, and cause remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Robert S. Johnstone, Deputy Asst. Dist. Atty., for the People.
Bertha Rembaugh, for relator.

INGRAHAM, P. J. [1] The question presented on this appeal is whether section 79 of the act in relation to inferior courts of criminal justice in the city of New York (chapter 659 of the Laws of 1910) is void as a violation of the Constitution of this state.

To clearly present the question, an analysis of this act will be useful. The act itself is entitled "An act in relation to the inferior courts of criminal jurisdiction in the city of New York, defining their powers and jurisdiction and providing for their officers." By section 2, two courts of criminal jurisdiction are established: First, the Court of Special Sessions; and, second, the City Magistrates' Courts. Article 2 provides for the organization of the Court of Special Sessions, and article 4 for the organization of the City Magistrates' Courts. By section 50 the City Magistrates' Courts in the city of New York are divided into two divisions, the first division to embrace the boroughs of Manhattan and the Bronx. Provision is then made for the appointment of magistrates, and article 5 relates to the jurisdiction and procedure of the City Magistrates' Courts. By section 88 it is provided that, upon a charge of vagrancy, if the person so convicted be a pros-

titute between the ages of 16 and 21, the magistrate may commit such person, for not exceeding one year, to certain institutions named in the act; that all other persons convicted upon a charge of vagrancy, including persons convicted as prostitutes except those committed under section 79 of this act (the section in question) and not committed to a reformatory as herein above provided, shall be committed in the boroughs of Manhattan, Brooklyn, and the Bronx to the workhouse on Blackwell's Island, and in the other boroughs of said city to a county jail for the term of six months. Section 77 provides for night courts and a separate court for women. Section 78 provides for the identification of prostitutes, and section 79 contains the provision under which the relator was committed, and which it is claimed violates the Constitution. In considering this section, we must bear in mind that the proceedings provided for are proceedings in a court of justice, the powers thereby granted are to be exercised by a judicial officer sitting in court, and the judgment therein rendered is the judgment of a court administering justice.

The proceedings respecting vagrancy are regulated by title 6 of the Code of Criminal Procedure. Section 887 of that Code (subdivision 3) provides that "a person who has contracted an infectious or other disease, in the practice of drunkenness of debauchery, requiring charitable aid to restore him to health," and (subdivision 4) "a common prostitute, who has no lawful employment, whereby to maintain herself," are vagrants, and therefore are persons coming under the jurisdiction of the inferior criminal courts; and section 1458 of the consolidation act (Laws 1882, c. 410) provides that a common prostitute loitering or soliciting in a public place is a disorderly person. By section 79 of the act of 1910 it is provided that:

"Any person who is a vagrant, as defined in subdivision four of section eight hundred and eighty-seven of the code of criminal procedure, or who is convicted of a violation of subdivision two of section fourteen hundred and fifty-eight of the consolidation act, or of section one hundred and fifty of the tenement house law, shall after conviction be taken to a room adjacent to the courtroom, and there be physically examined by a woman physician of the department of health detailed for that purpose. After such examination the physician making the same shall promptly prepare and sign a written report to the court of the prisoner's physical condition, and if it thereby appears that the prisoner is afflicted with any venereal disease, which is contagious, infectious or communicable, the magistrate shall commit her to a public hospital having a ward or wards for the treatment of the disease with which she is afflicted for detention and treatment for a minimum period fixed by him in the commitment and for a maximum period of not more than one year; provided, that in case a prisoner so committed to any institution shall be cured of her venereal disease, which is contagious, infectious or communicable, after the expiration of the minimum period and before the expiration of the maximum period for which she was committed to such institution, she shall be discharged and released from custody upon the written order of the officer in charge of the institution to which she was committed upon the certificate of a physician of such institution or of the department of health that the prisoner is free of any venereal disease which is contagious, infectious or communicable. If, however, such prisoner shall be cured prior to the expiration of the minimum period for which she was committed she shall be forthwith transferred to the workhouse and discharged at the expiration of said minimum period."

The Court at Special Term held that this act violated the Constitution, in that it directs the detention of the accused without due process of law, in that the nature of the sentence after conviction is made to depend upon the report of a physical examination without an opportunity for a hearing upon the facts entering into the report. There would be force in this objection if the construction placed upon section 79 of the act of 1910 by the learned judge at Special Term was required, but I think, without a violation of its provisions, a construction can be given to the act which will obviate these objections.

The conditions which by section 1458 of the consolidation act are characterized as disorderly conduct, and by section 88, c. 659, Laws 1910, as vagrancy are not of the character which are usually followed by imprisonment in the nature of punishment for an offense. It would not be said that a person who had contracted a contagious or infectious disease in the practice of drunkenness and debauchery requiring charitable aid to restore him to health should be subjected to punishment for his condition, but rather that medical assistance be extended and his reformation attempted; yet by section 88, c. 659, Laws 1910, such a person is a vagrant. It is recognized by those who have made a study of criminology that prostitution is evidence of insanity or degeneracy, and the offenses or conditions specified in these sections require more the supervision of the health and reformatory authorities of the state then commitment to penal institutions. The detention of a person within these provisions of the statute is not so much a punishment for a crime as a means for the reformation or protection of the individual who has become a vagrant or disorderly person and for the conservation of the public health, and the jurisdiction given to these courts of inferior criminal jurisdiction over vagrants and disorderly persons is therefore more reformatory than penal. When a person is brought before a judicial tribunal charged with this condition, he is to be subjected to such detention or treatment as will be best calculated to accomplish the end in view, and the statute should be considered in view of what seems to me to have been the evident intention of the Legislature in enacting the provisions in question.

Section 88 of the act now under review, to which attention has been called, requires the court or a magistrate to either commit a person who is convicted of disorderly conduct or vagrancy, unless committed under section 79 of the act, to one of the reformatory institutions mentioned in the section or to the workhouse on Blackwell's Island for the term of six months. Section 79, however, provides for a different commitment in case the person arrested should be suffering from a venereal disease which is contagious, infectious, or communicable, and whose presence either in the workhouse or after discharge from detention would be a menace to the health of the inmates of the institution to which she might be committed or to the public health after her discharge. In the case of an unfortunate afflicted with such a disease, the person is to be committed not to either of these institutions or to the workhouse, but to a public hospital maintained for the cure of diseases, to be detained in such hospital for a period not exceeding a year or until the disease shall have been cured. The authority

of the Legislature to provide for the committal of a vagrant or a person convicted of disorderly conduct to a workhouse for a period of six months is not disputed, nor do I imagine it could be seriously contended that the Legislature was without power to commit a vagrant suffering from a contagious, infectious, or communicable disease to a hospital rather than to a workhouse or other public institution. The objection taken to this statute is that the question of whether or not the convicted person was suffering from this disease is one that such person had the right to have determined by the magistrate as a matter of fact, and that, under this act, the magistrate is bound by the report of the physician who has made the examination and has found the existence of the disease which justifies the magistrate in sending such person to a hospital rather than the workhouse. But it seems to me this is a misconception of the duty imposed upon the magistrate, and not required by the language used in the section in question.

The relator was brought before the court charged with disorderly conduct under section 1458 of the consolidation act; and the first question presented was whether the relator was a disorderly person within this provision. That question having been determined by the conviction of the relator as a disorderly person, the question then was presented as to the extent of the detention and the institution in which the relator should be detained. To ascertain that fact, the statute required that there should be a physical examination by a woman physician connected with the department of health and detailed for such purpose. This was clearly a provision directly connected with the public health, and it seems to me was amply justified and clearly within the power of the Legislature. Certainly, if it had appeared that the relator was suffering from smallpox, cholera, or typhus fever or any other infectious disease, the court would not have been bound nor would it have been justified in committing the relator to a public institution which would endanger the lives of all its inmates, or in discharging the prisoner so infected to communicate the disease to all of the inhabitants with whom she should come in contact. The nature of venereal diseases is such that the result of infection is more serious than of the ordinary contagious or infectious diseases that are so carefully guarded against. To deny the power of the Legislature to provide for the isolation or detention of persons suffering from a venereal disease until cured or until the danger of infection has passed would prevent the health authorities from removing from a crowded tenement house a person suffering from smallpox, scarlet fever, or tuberclosis, or the quarantine authorities from removing to a hospital a passenger arriving at this port suffering from cholera or plague —precautions that have been always recognized as within the police power and justified by the danger of contagion from those suffering from such diseases.

Assuming, therefore, that the court had power to institute an inquiry as to whether the relator was suffering from such a venereal disease, and, if found to have such a venereal disease, committing her to a hospital instead of to the workhouse, the question then arises as to whether or not this statute, giving it a fair construction, deprived

a convicted person of any right to which he was entitled under the Constitution of this state. The statute provides that, after such a physical examination, the physician making the same shall promptly prepare and sign a written report to the court of the prisoner's physical condition, and, if it thereby appears that the prisoner is afflicted with any venereal disease which is contagious, infectious, or communicable, the magistrate shall commit her to a public hospital having a ward or wards for the treatment of the disease with which she is afflicted for detention and treatment for a minimum period fixed by him in the commitment and for a maximum period of not more than one year. There is nothing in this statute which in terms makes the report of a physician binding upon a magistrate, and nothing which prevents a magistrate from hearing testimony as to the prisoner's condition, or from determining the question as to her condition contrary to the report of the physician. It does not appear that the relator denied that she was suffering from such a disease, or asked to have that fact further investigated, or that she be allowed to prove that she was not afflicted with such a disease. It is true that the mandatory word "shall" is used rather than the permissive word "may" or "has authority to" commit the relator.

[2] But the instances are many in which courts have treated the mandatory word as merely permissive when necessary to sustain an act or accomplish the purpose which was clearly intended. Considering all the provisions of this article of the statute, it seems to me that the provisions of section 79 were provisions for the health of the community, and were intended to ameliorate the condition of one suffering from one of the most terrible of diseases, and to protect the community from infection. There is no provision that took away from the court its inherent power to determine a question of fact upon which it was required to act or prevent the court, if requested by the relator, from questioning the truth of the report of the physician, or from taking further testimony or investigating the correctness of the report, and determining for itself the existence of the disease which justified detention in a hospital rather than in a public institution.

It will be noticed that, under section 88 of the act, the court is required after conviction, if it do not suspend sentence or commit the person charged under section 79 of the act, to commit the relator to one of the institutions named for a period of six months. The court under the powers conferred by section 79 committed the relator to a public hospital for detention and treatment for a period of not less than two months, and not more than twelve months. We must assume the relator had been properly convicted. The question as to the nature of the detention only was before the court, and this question of detention was the only one to which section 79 applied. The commitment did not, however, absolutely commit the relator to the hospital or workhouse for a period exceeding six months, which was the period justified by section 88 of the act. It fixed upon two months as the minimum period of detention which was within the power of the magistrate under the provisions of section 88, and it further provided that, suffering from this contagious or infectious disease, she

should be detained in a hospital until she was cured or until the danger of infection had come to an end, the period of such detention, however, not to exceed in any event more than 12 months. There was not involved in this commitment any absolute detention exceeding the period of six months. Her detention beyond the period of two months depended entirely upon the character of the disease, and the period within which the disease could be cured. Under this commitment at any time after the period of two months, which was the detention which the act of the relator justified, she was entitled to be immediately discharged upon her being cured of, or if she was not then suffering from, the infectious disease with which she had been afflicted. If she was cured or had not then the disease, and the hospital authorities refused to release her, she was entitled to apply to the courts for relief. There certainly was no punishment inflicted or that could be inflicted under the provisions of the section in excess of that justified by law for the condition of which she had been convicted. The detention beyond which the court was justified in requiring and which this commitment provided for depending upon the relator's suffering from this disease, and was merely, it seems to me, a provision for the conservation of the public health.

It is claimed that the relator had been deprived of her liberty without due process of law. It seems to me, however, that neither the section contemplated that commitment without a hearing, nor does it appear that in this case the relator was committed without a hearing. The petition for the writ of habeas corpus is not made a part of the record; the appeal being based entirely upon the return to the writ. The return simply states that the defendant held the relator under a commitment, a copy of which was attached to the return. By that commitment, it appeared that the relator was in due form of law arraigned before the magistrate on the 25th of September, 1910, upon an information in writing and upon oath charging her with conduct tending to a breach of the peace under subdivision 2 of section 1458 of the consolidation act, and was duly tried by the magistrate and duly convicted; that, after her conviction, the relator was taken to a room and physically examined by a woman physician of the department of health detailed for such purpose; that such physician made a written report, whereby it appeared that the relator was afflicted with a venereal disease which is contagious, infectious, and communicable, whereupon the magistrate did order and adjudge that the relator be committed to a hospital for detention and treatment for a period of not less than two months and a period of not more than twelve months. And on the 25th of October, 1910, within less than two months from the commitment, this writ of habeas corpus was applied for. It is not claimed but what this commitment would have been valid for two months or in fact for six months from the date of the determination of the magistrates' court. It would not be claimed, I suppose, that the commitment of the relator to the "workhouse hospital" which was a hospital maintained as part of the workhouse system of the city of New York would have been void rather than to the workhouse itself, where it appeared that the relator was suffering from a disease which was contagious, infec-

tious, or communicable. The able brief of the relator submitted on this appeal seeks to establish that the relator was committed without due process of law, but it appeared that she was before the magistrates' court, was tried and convicted by it, that the magistrate then investigated the question as to whether or not the relator was suffering from a venereal disease and determined that she was, and therefore committed her to a hospital for treatment for a period not to exceed 12 months, or until the disease was cured.

Entertaining the views that I do as to the construction to be given to section 79 and upon this record, it seems to me that the relator was not entitled to be discharged. Nothing appears either by the return or by the papers before the court which shows that the relator was not given every opportunity to which she was entitled, that she was not tried and convicted according to law, or that there was not a judicial investigation and determination of the question upon which the warrant was based. The cases cited by the learned counsel for the respondent are all cases in which the incarceration of a person was allowed without an investigation by a judicial tribunal, of which the person had notice or an opportunity to defend, but in this case the statute requires that the person proceeded against should be before the court; that the court should pass upon the condition of the person proceeded against of which procedure such person necessarily had notice; that the determination was a judicial act with the person proceeded against present before the court, and not only the conviction of the defendant, but the term of detention, was a part of one proceeding of which the person proceeded against had notice.

[3] Other objections are taken to this proceeding on which extended comment is unnecessary. It is said that this commitment was class legislation, and deprived the relator of the equal protection of the laws; but clearly under the police power the Legislature had power to prescribe the punishment or detention of those convicted of vagrancy or disorderly conduct, and the extent of the punishment upon a conviction was within the power of the Legislature.

It is also claimed that this act relates to women only, and not to men, who are suffering from these diseases. But it was clearly a question for the Legislature to say whether the public interests or the public health required that a woman afflicted with a venereal disease should be treated differently from a man. But public prostitution only applied to women, and every person convicted of public prostitution is within the act. Nor do I think this can be said to be an unreasonable exercise of the police power.

My conclusion, therefore, is that the order appealed from should be reversed, and proceeding dismissed, and the relator remanded.

LAUGHLIN and MILLER, JJ., concur.

CLARKE, J. (dissenting). Section 79 of chapter 659 of the Laws of 1910 provides as follows:

"Medical examination of prostitutes. On and after the first day of September, 1910, any person who is a vagrant as defined in subdivision 4 of section 887 of the Code of Criminal Procedure, or who is convicted of a viola-

tion of subdivision 2 of section 1458 of the consolidation act, or of section 150 of the tenement house law, shall after conviction be taken to a room adjacent to the courtroom, and there be physically examined by a woman physician of the department of health detailed for such purpose. After such examination the physician making the same shall promptly prepare and sign a written report to the court of the prisoner's physical condition, and if it thereby appears that the prisoner is afflicted with any venereal disease, which is contagious, infectious or communicable, the magistrate shall commit her to a public hospital having a ward or wards for the treatment of the disease with which she is afflicted for detention and treatment for a minimum period fixed by him in the commitment and for a maximum period of not more than one year; provided, that in case a prisoner so committed to any institution shall be cured of her venereal disease, which is contagious, infectious or communicable, after the expiration of the minimum period and before the expiration of the maximum period for which she was committed to such institution, she shall be discharged and released from custody upon the written order of the officer in charge of the institution to which she was committed upon the certificate of a physician of such institution or of the department of health that the prisoner is free of any venereal disease which is contagious, infectious or communicable. If, however, such prisoner shall be cured prior to the expiration of the minimum period for which she was committed she shall be forthwith transferred to the workhouse and discharged at the expiration of said minimum period. Nothing herein contained shall be construed to limit the authority of a city magistrate to commit any prisoner for an indeterminate period to any institution now having authority by law to receive inmates for detention for a period of more than one year."

Section 1458 of the consolidation act (chapter 410 of the Laws of 1882), referred to in the foregoing statute, provides as follows:

"Every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say, * * * (2) Every common prostitute or night walker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by."

In my opinion this section of the statute violates the provisions of article 1, § 6, of the Constitution of the state of New York and amendment 5 and amendment 14 of the Constitution of the United States, because it requires the magistrate to commit the prisoner upon the report of a nonjudicial officer of the ascertainment of a nontraversible state of facts in an investigation made by him out of court.

In the opinion of Mr. Presiding Justice INGRAHAM, he attempts to avoid this construction, first, by interpreting the statute as a health measure; and, second, by construing its mandatory language as permissive only. I regret that I am not able to agree with him. This is the first attempt made by the state to deal with an important question regarding the public health, not, as suggested by the learned counsel for the relator, in the interests of a small class of vicious men to preserve them from the consequences of their evil doing, but of the whole community, for facts well known to the medical faculties indicate that a very large amount of the dread consequences of venereal disease is visited upon absolutely innocent persons, men, women, and children, often upon persons who have themselves been continent, who acquire the disease or its sequallæ without personal wrongdoing.

It is the duty of the courts to uphold the laws passed by the Legislature if possible and especially legislation of the character of that

under consideration, which, I agree, has for its main object the preservation of health. But, however commendable the object sought to be attained, no law can be sustained which violates the fundamental constitutional provision that no person shall be deprived of life, liberty, or property without due process of law. Section 88 of the act under consideration provides that:

"Whenever any person * * * is convicted in the city of * * * disorderly conduct that tends to a breach of the peace, or vagrancy, the magistrate before whom such conviction is had shall, if he do not suspend sentence and place on probation, impose upon the person so convicted one or other of the penalties herein provided: Upon a charge of vagrancy, if the person so convicted be a prostitute between the ages of 16 and 21, the magistrate may commit such person for not exceeding one year * * * [enumerating certain institutions]. All other persons convicted upon a charge of vagrancy, including persons convicted as prostitutes, except those committed under section 79 of this act, and not committed to a reformatory as hereinabove provided, shall be committed in the boroughs of Manhattan, Brooklyn and the Bronx to the workhouse on Blackwell's Island, and in the other boroughs of said city to a county jail for the term of six months. Upon a charge * * * of disorderly conduct that tends to a breach of the peace (except in the cases where the commitment is made under section 79 of this act) the magistrate may impose the penalty as follows: (1) Commit the person so convicted in the Borough of Manhattan, Brooklyn and the Bronx, to the workhouse and in the other boroughs of said city to a county jail or to said workhouse to be detained for the term of six months. (2) Commit the person so convicted in the boroughs of Manhattan, Brooklyn and the Bronx to the workhouse and in the other boroughs to the county jails therein for a definite period not to exceed six months. (3) Impose a fine not exceeding $10. * * * (4) Require any person convicted of disorderly conduct which tends to a breach of the peace, to give sufficient surety or sureties for his good behavior for a period of time to be recited in the commitment of not more than six months. * * * "

That is, under section 88, a prostitute convicted of vagrancy under subdivision 2 of section 1458 of the consolidation act, who was not infected might have sentence suspended, be placed on probation, be committed for the term of six months or for a period not to exceed six months, be fined not exceeding $10, or be required to give surety for good behavior for a period not exceeding six months, while under section 79 a prostitute who is convicted of vagrancy who was infected is required to be committed for a minimum period not fixed by the statute and a maximum not exceeding one year. So that the magistrate might make the minimum period 11 months and 29 days, and so the prisoner, if cured within said period, would not be discharged, but merely transferred from the hospital to the workhouse or jail; that is, one prostitute convicted of vagrancy might be fined $1 and could not be imprisoned for more than six months, while the other must be imprisoned for a term which might extend for 11 months and 29 days, and this difference in possible sentence is made to depend upon a fact not traversible, decided out of court by a nonjudicial officer, whose written report is made conclusive upon the magistrate.

The prevailing opinion construes the mandatory word of the statute "shall" into the permissive word "may." I think this construction is clearly against the legislative intent. Section 88, as shown above, gives the widest lattitude to judicial discretion in the case of the healthy prostitute, but proceedings under section 79 are expressly and

explicitly excepted from said provisions. There is no alternative the magistrate shall commit upon the written report of the physician if it "thereby appears that the person is infected," etc. This act was prepared and reported to the Legislature by the commission appointed pursuant to chapter 211 of the Laws of 1908.

In its report the commission said under the heading "prostitution":

"Women of this class are arrested upon various charges, such as vagrancy, soliciting for purposes of prostitution, disorderly conduct, violation of the tenement house law, etc. * * * The magistrates differ widely as to the disposition of such cases. It is a problem so old and so difficult that there is of necessity a conflict of opinion as to how such cases should be disposed of. At present, some magistrates pursue a practically consistent course of sending these women to the workhouse. Others quite as consistently impose fines, and others discharge, while nearly all place on probation some cases which suggest in their opinion possibilities of reform. * * * Instances have come to the attention of the commission where a prostitute has been fined many times, and yet when she is committed to the workhouse, if that be her first commitment, she can be detained only five days, while, on the other hand, another woman who has been convicted perhaps for the first or second time may be punished to an equal or greater extent than the constant offender. * * * The difference of views of the magistrates as to the disposition of cases of this character leads to other results. If a magistrate has the reputation of sending these women to the workhouse, the public streets are much less patrolled by them than if the magistrate has the reputation of fining or discharging. Some of the magistrates who commit to the workhouse fear that the severity of the punishment leads to a greater opportunity by police officers, because such a woman will more readily accede to extortion where she fears that she may be imprisoned. * * * It is apparent that some step must be taken to deal more adequately and intelligently with this problem, and, although the commission realizes that no law which can be devised at this time will solve the problem, nevertheless steps can be taken which may at least to some extent diminish the attendant evils. * * * We deem it wise, therefore, to recommend that in every case where a woman is convicted of an offense connected with prostitution such woman must be examined by a woman physician detailed for that purpose by the board of health, and such physician shall certify to the magistrate the results of her examination. We recommend, where such certificate shows that the woman has a venereal disease, that the magistrate shall be required to commit her for an indeterminate sentence if not to exceed one year. *. * * The magistrate should have the fullest power to deal with each case upon its merits, placing on probation if he thinks wise, or taking such other steps as he may deem proper, with the limitation, however, that he must commit to an institution in a case of disease as above described."

An examination of the statute as passed clearly shows that it was drawn in view of the facts reported and upon the lines suggested. When we find in the report that wide discretion should be lodged in the magistrate "with the limitation, however, that he must commit to an institution in the case of disease as above described" and the statute as passed conforms to the recommendation, it follows, it seems to me, that we have no right to construe mandatory into permissive language, but must conclude that the Legislature, acting upon the report, meant what it said in the language used, and there is no room for construction.

I cannot avoid the conclusion, therefore, that a woman coming within the provision of the section receives a sentence not for the offense for which she was brought into court and upon which she has been convicted, but based upon her condition of health in regard to

which she has not had a hearing, and that, under such circumstances, she may be detained of her liberty, cured or uncured, for 11 months and 29 days, where another woman convicted of the same offense, but not diseased, can in no event be deprived of her liberty for more than 6 months. A person deprived of liberty upon facts not ascertained upon a hearing is so deprived without due process of law. It is no answer to say that in no case yet has the sentence of a magistrate exceeded six months as a minimum, for, when the validity of an act is under consideration, the court must "consider not only what has been done under the law in a particular instance, but what may be done under and by virtue of its authority." Fisher Company v. Woods, 187 N. Y. 90, 79 N. E. 836, 12 L. R. A. (N. S.) 707. The prevailing opinion alludes to section 887, subd. 3, of the Code of Criminal Procedure (and the same provision is found in section 1464 of the consolidation act). "A person who has contracted an infectious or other disease, in the practice of drunkenness or debauchery, requiring charitable aid to restore him to health," is a vagrant. But section 890 requires him to be taken before a magistrate, and this alleged condition is a traversible issue, for section 891 provides:

"If the magistrate be satisfied from the confession of the person brought before him, or by competent testimony, * * * he must convict him."

It is the absence of the requirement of competent testimony in the case at bar that affects the statute.

In the fundamental defect, namely, that the term of imprisonment depends upon a fact found out of court by a nonjudicial officer, this legislation is similar to that condemned in Matter of Kenny, 23 Misc. Rep. 9, 49 N. Y. Supp. 1037, affirmed on the opinion below, 30 App. Div. 624, 53 N. Y. Supp. 1111. See, also, People ex rel. Abrams v. Fox, 77 App. Div. 245, 79 N. Y. Supp. 56, where the law under consideration in said cases after amendment to meet the defects pointed out was sustained. For the proposition that the fact that the object and purposes of an act are not penal, but protective, does not take said act without the constitutional provision as to due process of law, see People ex rel. Ordway v. St. Saviour's Sanatarium, 34 App. Div. 363, 56 N. Y. Supp. 431.

For these reasons, and without considering the further objections to the legislation, properly disposed of at the Special Term, I think the order appealed from was right and should be affirmed.

DOWLING, J., concurs.