Froessel, J.
Appellant challenges the constitutionality of sections 74 and 76 of the Mental Hygiene Law, insofar as they permit the continued confinement of an alleged mentally ill person without the prior notice or hearing, which appellant maintains is required by the due process clauses of the State and Federal Constitutions.
The statutory procedure may be quickly reviewed. Section 74 provides that a person alleged to be mentally ill may be confined in an institution for the care and treatment of such persons, pursuant to a court order granted on the petition of a relative or other specified person, and accompanied by a certificate of two examining physicians, stating that such person is in need of care and treatment (§ 74, subds. 1, 2). The person alleged to be mentally ill is entitled to personal service of notice of the application for the order at least one day in advance thereof (subd. 3). However, that notice may be dispensed with in the court’s discretion, and shall be dispensed with if the examining physicians state in writing that, in their opinion, such service would be detrimental to such allegedly ill person (id.). If the petition is made by the wife, husband, father, mother or nearest relative, no notice is required to any person even though notice to the allegedly ill person has been dispensed with (id.). When no application is made for a hearing on behalf of the allegedly ill person, provided for in subdivision 5, the Judge may, if satisfied that care and treatment are necessary, immédiatély direct *246 commitment for a period not exceeding 60 days for the purpose of observation and treatment (subd. 4).
Subdivision 7 of section 74 provides that at any time prior to the expiration of 60 days from the date of the commitment order — which authorized the temporary confinement-—-the director, physician or other person in charge of the institution to which the patient has been admitted, or a duly designated medical officer, may file a certificate in the office of the County Clerk stating, after so finding, that continued care and treatment are required. Thereupon, although no notice of the filing has been given to the court, the person confined or someone on his behalf, “ the order theretofore made by the judge shall become a final order and such patient shall thereafter remain in such institution, or any other institution, to which he may be transferred, until his discharge in accordance with the provisions of this chapter ” (subd. 7).
The discharge may be secured on the certificate of the director of the institution that the patient (1) has recovered; (2) is not mentally ill; or (3) while not recovered may be cared for at home, and that this would not be detrimental to the public welfare or injurious to the patient (§ 87). A discharge may also result at any time from a determination in a habeas corpus proceeding that the patient is sane at the time (§ 204) (Matter of Gurland, 286 App. Div. 704, 706), or as the result of a proceeding instituted under the provisions of section 76.
Section 76, the only method of discharge with which we are here concerned, provides that if the person committed, or any relative or friend in his behalf, “ be dissatisfied with the final order of a judge or justice certifying him, he may, within thirty days after the making of such order, obtain a rehearing and a review of the proceedings already had and of such certification, upon a petition to a justice of the supreme court other than the justice making such certification, who shall cause a jury to be summoned * * * and shall try the question of the mental illness of the person so certified ”. For a comprehensive statement of the prior statutory law on this subject, see Sporza v. German Sav. Bank (192 N. Y. 8).
Now as to the relevant facts. On April 17, 1957 appellant was certified to the Rochester State Hospital by order of a County Judge upon the petition of her husband and the brief joint medi *247 cal certificate of two examining physicians. Personal service of notice of the application was dispensed with, pursuant to subdivision 3 of section 74, by reason of the following statement in the physicians’ certificate: “ Personal service of notice would be aggravating and detrimental to patient in her present mental state.” No facts were stated in support of this conclusion, and it would appear that appellant was not personally seen by the court prior to the issuance of the order. No hearing appears to have been demanded, as provided for in subdivision 5 of section 74.
The court’s order, which directed appellant’s admission to the hospital “ for observation and treatment for a period not exceeding 60 days ”, also provided that, upon the filing of the certificate referred to in subdivision 7 of section 74, ‘ ‘ this order shall then become final ”. Its finality, however, was subject to the review procedure of section 76. This certificate, which was duly filed in the office of the Monroe County Clerk on May 2, 1957, merely stated that appellant was found to be mentally ill and in need of continued care and treatment. No facts were stated in support of the hospital authorities’ conclusions. Appellant did not receive notice of the filing of this certificate. On May 13, 1957 appellant was released by the institution and placed in the care and custody of her mother, subject, however, to the requirement that she report to the institution once every month.
By petition dated June 17, 1957 appellant sought a jury trial of the question of her mental illness pursuant to the provisions of section 76. By an order entered September 11, 1957 her petition was denied as untimely—not having been made within the 30-day period commencing May 2,1957 (when the certificate was filed). Thereafter, by notice of motion dated February 3, 1958, appellant sought to vacate the original certification order and the other proceedings on the ground that the statute under which they were conducted, made and entered is unconstitutional. By an order entered March 28,1958 the original order and related proceedings were ratified and confirmed, and appellant’s motion denied.
Both of the above orders were appealed to the Appellate Division. The order denying appellant a jury trial was reversed and the order denying the motion to vacate was affirmed. Although they were treated together in the opinion below, only the latter order is presently before us.
*248 The Appellate Division did not deem it necessary to pass upon appellant’s contention that the statutory provisions are unconstitutional. Bather, quoting with approval from the decision of this court in People ex rel. Morriale v. Branham (291 N. Y. 312, 317), the court stated: “ ‘ Unless the statute provides expressly or by necessary implication that an adjudication may be made without notice to the person whose detention or restraint is sought, we may reasonably find implicit in the statute a direction that the judicial decision and decree shall be made only in accordance with due process of law after notice and opportunity to be heard. ’ ” Although not expressly so stating, the Appellate Division was apparently of the opinion that the right of judicial review provided for in section 76 gave appellant sufficient opportunity to be heard on the question of her alleged mental illness. It noted, however, that a strict interpretation of that section would eliminate the patient’s right of review 30 days after the filing of the certificate with the County Clerk— ‘ ‘ a strictly ex parte act ” — of which the patient may never become aware. Therefore, it was held that “ Inasmuch as the institution is entitled to the full period of 60 days to observe and treat and in view of the further fact that the institution may act at any time during the period without notice of its action it is concluded that the period of 30 days within which a judicial review may be sought does not commence to run until the expiration of the 60 days from the date of the making of the commitment order.”
The court “.pointed out in passing ” that “ the institution, if it so desired, might be able to commence the running of the period of 30 days by [earlier] notice to the appropriate parties.” This was not made a requirement, however, and the court did not undertake ‘ ‘ to formulate a rule as to who the appropriate parties might be ”.
Appellant contends that, even under the construction placed upon the statute by the Appellate Division, the fundamental due process requirement of “ actual ” notice and an opportunity to be heard prior to the entry of the final order authorizing permanent confinement of an alleged mentally ill person is not met. Appellant also maintains that the statute is unconstitutional because permanent confinement results from the ex parte filing of a certificate by a nonjudicial officer, stating findings which the patient is given no opportunity to traverse.
*249 Although challenging" the statutory provisions insofar as they relate to so-called permanent confinement, appellant “ raises no question here as to the propriety of temporary restraint without notice ”. It is conceded that, where immediate action is necessary-for the protection of society and for the welfare of the alleged mentally ill person, due process does not require notice or hearing as a condition precedent to valid temporary confinement. This is well settled (Sporza v. German Sav. Bank, supra [although subsequent notice was there given (p. 15)]; People ex rel. Ordway v. St. Saviour’s Sanitarium, 34 App. Div. 363, 370; Matter of Andrews, 126 App. Div. 794, 799).
This court has long recognized that the exact meaning and scope of the phrase “ due process of law” cannot be defined with precision (Stuart v. Palmer, 74 N. Y. 183, 191 [1878]). We there, however, stated what we consider to be the very least which would satisfy due process as follows: “ due process of law requires an orderly proceeding adapted to the nature of the case in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this.” (Emphasis supplied.) (See, also, Matter of Lyons v. Goldstein, 290 N. Y. 19, 24-25.) Due process does not, however, “ guarantee to the citizen of a state any particular form or method of state procedure ” (Dohany v. Rogers, 281 U. S. 362, 369). “ Its requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard ”. (Ibid.)
Consequently, if the statute before us contained no provision affording appellant an opportunity to litigate fully the question of her mental illness and the propriety of the proceedings which led to her confinement, it would unquestionably be violative of due process. Such was the case in People ex rel. Ordway v. St. Saviour’s Sanitarium (34 App. Div. 363, supra) which involved the commitment of an inebriate under the provisions of chapter 467 of the Laws of 1892, and upon which appellant places such great reliance. Although the court held the statute to be violative of due process because it did not provide for either notice or hearing prior to an ex parte final commitment of an inebriate woman, it is suggested in the opinion that the result may have been otherwise had the statute provided for an “ investigation after commitment ” into the legality of the con- *250 finement and the proceedings which led thereto (34 App. Div., supra, p. 374).
In the case before us, ample provision is made in section 76 for a complete rehearing and review ab initio. Thus the finality of the court order is subject to the right of review. Iti our opinion, this provision saves the constitutionality of section 74. Moreover, it should be noted, the alleged mentally ill person is not declared ‘ ‘ incompetent ’ ’; she is merely hospitalized in the first instance for not more than 60 days, and her hospitalization may then be continued beyond that period only if “ the person in charge of the institution # * * finds that such patient is in need of continued care and treatment ”.
In Matter of Blewitt (131 N. Y. 541) appellant sought to set aside a commission and proceedings in lunacy, and the appointment of a committee, on the ground that the alleged lunatic had no notice of the proceedings — or, in the alternative, that an issue be awarded to try the fact of lunacy. Special Term denied the relief to vacate, but made an order directing a jury trial of the issue. The order was affirmed by General Term. This court, in affirming the orders below, and noting that attempts are frequently made to get control of the person and property of another by the aid of lunacy proceedings, stated (p. 547) that ‘1 a very clear case should be made before the court should proceed in lunacy proceedings, in the absence of actual personal and written notice to thé party, and that unless such a case is made by the petition or affidavits, and an order made by the court dispensing with personal notice and providing for notice to relatives or others in lieu of personal notice an adjudication in the absence of such notice should be set aside.” The order below was nevertheless affirmed on the ground that appellant was permitted to ‘ ‘ traverse not the inquisition, but the original petition, thereby putting him in the same position as upon an original hearing thereon ”, and for other reasons making it very clear that a full opportunity had been presented for appellant to litigate the question of his sanity (emphasis supplied).
Appellant contends that section 76 does not cure the defect in section 74 because the hearing it provided for is after, rather than before, the order of certification has become final, and that she will have no means of determining what proof will be offered against her. This contention is wholly without merit, inasmuch *251 as the finality of the order is subject to review under section 76. Moreover, the Supreme Court of the United States, in somewhat analogous situations, has made it clear that the provisions of an act authorizing the seizure of property without a prior judicial hearing are 1 ‘ rescued from constitutional invalidity ’ ’ by provisions affording the claimant a subsequent judicial hearing as to the propriety of the seizure (Societe Internationale v. Rogers, 357 U. S. 197, 211; see, also, Falbo v. United States, 320 U. S. 549, 554).
This principle has been extended to commitment cases by several State courts, and ex parte commitment for an indefinite time has been upheld where the statute made adequate provision for the allegedly mentally ill person to test the legality of his confinement after his admission (In Re Petition of Crosswell, 28 R. I. 137; Dowdell, Petitioner, 169 Mass. 387; Payne v. Arkebauer, 190 Ark. 614; In re Bryant, 214 La. 573). Precisely such a right is given to appellant by virtue of the provisions of section 76.
Although it is true that the order of certification directs that the papers “ be sealed in the office of the County Clerk ”, it also provides for their disclosure to “ parties to the proceedings, or someone properly interested, upon the order of the Court ”. It is inconceivable that appellant or someone on her behalf would be denied access to these papers during the course of her preparation for the jury trial which she has demanded pursuant to section 76.
The really crucial question involved in this appeal is: Does section 76 provide for adequate notice to appellant that the 30-day period, in which she must make her demand for a jury trial, has commenced to run? Obviously, the “ right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest” (Mullane v. Central Hanover Trust Co., 339 U. S. 306, 314). Furthermore, the “ notice must be of such nature as reasonably to convey the required information ”, for, as the court stated, “ when notice is a person’s due, process which is a mere gesture is not due process ” (339 U. S., supra, pp. 314-315).
As previously noted, the Appellate Division held that the 30-day period within which judicial review may be sought does *252 not commence to run until the expiration of 60 days from the making of the commitment order. The court did not require actual notice, nor did it suggest how the confined person would ever become aware that his time to demand a jury trial had commenced to run. To imply such notice from the mere provisions of the statute by virtue of the presumption that the confined person knows the law is, in our judgment, highly unrealistic. Moreover, we believe that such implied or constructive 11 notice ” falls short of even the “ mere gesture ” which was held to be insufficient in the Múlleme case (supra).
■ Nothing short of actual personal service of notice upon the allegedly ill person can suffice to commence the running of the 30-day period (see People ex rel. Sullivan v. Wendel, 33 Misc. 496, 498). The arguments advanced in favor of dispensing with notice of the original application for the commitment order lose their vitality once the patient has been received in custody by the hospital authorities. Surely the experience of receiving notice that a possible means of release is available can hardly aggravate the condition of a person presently restrained of her liberty against her will. Moreover, once in confinement the patient can no longer be considered a danger to society, to herself or others for she will be under the care, observation and watchful eyes of the hospital staff.
Although section 76 does not expressly provide for such notice, we find precedent for construing the statute so as to provide therefor in People ex rel. Morriale v. Branham (291 N. Y. 312, supra). In that case, appellant was retained in confinement after the expiration of his prison term by reason of an order adjudging bim to be a mental defective, entered pursuant to the provisions of section 440 of the Correction Law. Appellant had been given no notice of the application for such an order, and had no opportunity to challenge the ex parte assertion that he was a mental defective. Chief Judge Lehman noted that the statute, which did not require that notice of the application be given to the prisoner, may well be unconstitutional. Therefore, speaking for a unanimous court, he stated (291 N. Y., supra, p. 317): “ [Such a statute] must if possible be given a construction which will not offend constitutional guarantees of liberty or offend fundamental concepts of the common law. Unless the statute provides expressly or ly necessary implication that an *253 adjudication may be made without notice to the person whose detention or restraint is sought, we may reasonably find implicit in the statute a direction that the judicial decision and decree shall be made only in accordance with due process of law after notice and opportunity to be heard.” (Emphasis supplied.) (See, also, Wong Yang Sung v. McGrath, 339 U. S. 33, 50; Matter of Hecht v. Monaghan, 307 N. Y. 461, 468.)
No express provision is contained in section 76 that notice shall not be given to the patient, and we are not compelled to imply such provision, especially when such a construction might well render the statute violative of due process. This is in accord with the well-settled principle of statutory construction that ‘ ‘ statutes must be construed to avoid not only the conclusion that they are unconstitutional, but also to avoid any grave doubts upon that score” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150, p. 237, n. 97, and cases cited therein; Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677, 687; People v. Barber, 289 N. Y. 378, 385).
In Chaloner v. Sherman (242 U. S. 455) it was held that the omission of the New York .statutes to provide expressly for notice of and opportunity to be heard at an inquisition held in the course of proceedings de lunático inquirendo was not violative of due process. The court found that the requisite notice and opportunity to be heard were required by the decisions of this court, and, therefore, were “ required by the law of New York though not expressly recited in the statute ” (242 U. S., supra, p. 460).
Appellant’s final contention is that the statute before us is unconstitutional because the continued confinement after the expiration of the 60-day period provided for in the original commitment order results from the ex parte filing of a certificate by a nonjudicial officer, whose findings are not traversable by the alleged mentally ill person. Of course they are traversable under section 76. Moreover, the maker of the certificate is not purporting to exercise the office of a Judge, but the Judge has in effect made the person named in the statute his agent to observe the patient and treat him if necessary, and if, on the basis of such observation and treatment, the patient requires further care (that is, more than 60 days), the Judge requires merely that the person named in the statute file his certificate in the *254 County Clerk’s office. Furthermore, the initial order itself provided for its becoming a final order (although subject to review) upon the filing of the certificate within 60 days. Thus at least tentative finality resulted from an order made by a judicial officer and not from the mere fact that a certificate was filed and, if a review is demanded, the findings of the medical officer may be challenged, whereupon an additional order will be made by the court.
Appellant’s reliance upon People ex rel. Barone v. Fox (202 N. Y. 616, revg. upon dissenting opinion of Clarke, J., 144 App. Div. 611, 621) and Matter of Kenny (23 Misc. 9, affd. 30 App. Div. 624) is misplaced. In neither of those cases did the statutes involved contain a provision similar to section 76, whereby the person confined might challenge the correctness of the ex parte finding made by the nonjudicial officer. It is significant to note that the very statute which was held unconstitutional in Matter of Kenny (supra), after being amended to provide for notice and an opportunity to be heard in opposition to the ex parte factual finding, was upheld (see People ex rel. Abrams v. Fox, 77 App. Div. 245).
For the reasons heretofore stated, we conclude as follows:
(1) Appellant’s temporary confinement without actual personal notice to her was valid, and this is conceded.
(2) The continuance of confinement beyond the temporary period, under subdivision 7 of section 74, where the person in charge of-the institution “ finds that such patient is in need of continued care and treatment ” is not subject to successful constitutional challenge as violative of due process or otherwise, so long as the patient has the right to a prompt and complete hearing or review of the determination ab initio.
(3) Her continued confinement may be challenged immediately after the filing of the certificate under subdivision 7 of section 74, but the 30-day period of limitation withdrawing that right may not begin until notice of the filing has been given her. As to this appellant, the 30-day period has not begun to run.
(4) Inasmuch as the initial order is subject to the provisions of section 76, it cannot be final where review is invoked until after a determination by the court in the section 76 proceeding. Thus appellant is in fact offered the opportunity to challenge, before the court, the finding as to the need for continued treat *255 ment before that finding becomes conclusive upon her, and due process is thus satisfied.
(5) We do not agree with the Appellate Division that after 90 days the patient is forever barred. This holding, in our view, would render the statute unconstitutional.
Accordingly, the order appealed from should be affirmed, without costs.
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis, Burke and Foster concur.
Order affirmed.