**Gertrude McCALL**

v.

**Bernard SHAPIRO, Commissioner, Connecticut Welfare Department.**

**Civ. No. 12708.**

United States District Court
D. Connecticut.

Oct. 18, 1968.

Sydney T. Schulman and Mary R. Hennessey, Hartford, Conn., for plaintiff.

Francis J. MacGregor, Asst. Atty. Gen., East Hartford, Conn., for defendant.

## RULING ON MOTION TO CONVENE A THREE-JUDGE DISTRICT COURT

BLUMENFELD, District Judge.

The plaintiff has brought this action in forma pauperis to test the validity of certain statutes and regulations relating to the administration of that part of Connecticut's comprehensive scheme of public assistance relating to Aid to Families with Dependent Children (AFDC). See Conn.Gen.Stats.Ann., Chapter 302, Part II, §§ 17–84 to 17–107 inclusive.[1] Specifically, she challenges §§ 17–2a and 17–2b, which afford a fair hearing before the Welfare Commissioner by any person aggrieved by a decision of the Commissioner, and a right of appeal therefrom to the Circuit Court. Her contention is that on their face and as applied under regulations promulgated thereunder they deny her the "due process" guaranteed by the fourteenth amendment. Neither the statutes nor the regulations specifi-

cally provide for a hearing *prior* to an administrative order.

Acting under the statute, the Commissioner temporarily suspended AFDC payments for the assistance of plaintiff and two minor daughters prior to a hearing. Contending that the Commissioner's order was on that account a denial of due process, she asks for a declaratory judgment and a permanent injunction enjoining the defendant from "modifying, suspending or terminating public welfare assistance *prior* to a fair hearing."

### *Jurisdiction*

The plaintiff relies upon 42 U.S.C. § 1983 for a cause of action and upon 28 U.S.C. § 1343(3) for this court's jurisdiction. Since the plaintiff seeks an injunction restraining the enforcement of a state statute, she has requested the convocation of a three-judge district court under 28 U.S.C. §§ 2281, 2284.

It is now well settled, see Green v. Board of Elections, etc., 380 F.2d 445, 448 (2d Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968), quoting Utica Mut. Ins. Co. v. Vincent, 375 F.2d 129, 130 (2d Cir.), cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967), that "[w]hen a complaint for an injunction makes a claim of unconstitutionality which on its face would require a court of three judges * * * the single district judge should consider whether the claim is substantial and, if he finds it is not, refuse to convoke a court of three judges and dismiss the action."

The threshold question, therefore, is whether there is a lack of substantiality in the federal question presented "either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of [the Supreme] Court as to fore-

---

[1] Connecticut along with every other state participates in the federal government's Aid to Families with Dependent Children Program, under which the state receives substantial payments for federally approved plans of state aid to needy families with children. See 42 U.S.C. §§ 601, 602.

close the subject." California Water Serv. Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938).

When the question is what process is due, the answer must depend on the conflicting interests of the parties and the circumstances of the particular case. E. g., Dixon v. Alabama State Bd. of Educ., 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed. 2d 193 (1961). Where the broad claim is made that due process requires a hearing prior to decision "the specific context of fact and decision out of which the question arises must be set forth." FCC v. WJR, 337 U.S. 265, 267, 69 S.Ct. 1097, 1099, 93 L.Ed. 1353 (1948). In her complaint, it appears that the plaintiff makes two separate claims. Although properly joined in one action, it will make for clarity to consider them separately. Accordingly, the facts upon which plaintiff claims an unconstitutional denial of due process are considered first. At this stage of the proceedings, the facts as alleged in her complaint are taken as true. See Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

### The Facts.

For more than five years before the incidents which precipitated this suit the plaintiff had been receiving state welfare assistance in behalf of herself and her two daughters, Carolyn Summerset (now in her sixth year) and Georgianna Merchant (age eleven).

On May 24, 1968, the plaintiff was notified by the Social Security Administration that her daughter Georgianna was found eligible to receive Old Age, Survivors and Disability Insurance benefits (OASDI) under Title II of the Social Security Act. The following month, June 1968, the plaintiff received as representative payee for Georgianna a retroactive lump sum OASDI payment in the amount of $334.10 for the period beginning September 1967 through and including May 1968. The monthly amount was $45.20 for each of the months of September, October, November, December 1967 and January 1968, and $51.10 for each of the months of February, March, April and May 1968.

Upon receipt of the OASDI lump sum payment, the plaintiff notified defendant's agent and advised said agent that pursuant to the instructions for representative payees enclosed with the payment, this money would be used for Georgianna's present and future needs. Whereupon, defendant's agent made demand upon the plaintiff for the total amount of the lump sum OASDI payment as reimbursement for assistance rendered Georgianna during the months covered by that payment.

Upon plaintiff's refusal to turn over the OASDI payment to defendant's agent, the plaintiff was notified that the total AFDC for herself and her two daughters would be terminated for that period of time which it would take the three of them to exhaust the $334.10 OASDI payment using said amount to meet their combined living expenses. Plaintiff's AFDC assistance was terminated on May 29, 1968.

On June 6, 1968, the plaintiff requested a fair hearing. This was granted, and a hearing was held on June 20, 1968. At the fair hearing the plaintiff argued: (a) that the OASDI retroactive lump sum payment was a restricted payment made in behalf of a minor and as such exempt from the defendant's reimbursement requirement; and (b) that termination of plaintiff's AFDC for herself and two children without first according her a hearing was a denial of "due process of law" guaranteed under the fourteenth amendment of the United States Constitution, since once having been found eligible to receive assistance, plaintiff's right to continue to receive such assistance could not be terminated without a hearing.

The fair hearing decision, rendered on July 23, 1968, rejected plaintiff's arguments and upheld the action of the defendant in withholding assistance.

## The Right Involved

■■ The nature of a claim for welfare assistance is not irrelevant to the measure of due process protection accorded its allowance. Some rights are accorded more protection than others. Cf. United States v. Carolene Products Co., 304 U.S. 144, 152–153 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938).

> " 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. * * * Therefore, * * * it can be said that due process embodies the differing rules of fair play, which through the years have become associated with differing types of proceedings. * * * *The nature of the alleged right involved * * * must be taken into account.*" Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed. 2d 1307 (1959) (Emphasis added).

■ In describing benefits under Title II of the Social Security Act (OASDI), the Supreme Court has said that although these benefits are in one sense "earned," they do not rise to the dignity of "accrued property rights." The Court held that not every deprivation of such benefits would be "violative of the Due Process Clause of the Fifth Amendment." Flemming v. Nestor, 363 U.S. 603, 610–611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1959). A welfare beneficiary's interest in AFDC assistance cannot in any sense be said to have been "earned." Such welfare assistance (AFDC), whether classified as a "benefit" or a "gratuity" has even fewer attributes of a "right" than Social Security benefits (OASDI). Nonetheless, the absence of a substantive "property right" does not alone establish the absence of a right to fair procedure. The courts have not confined the protection of the fourteenth amendment's due process clause to "property" in the conventional sense. Cf. Slochower v. Board of Educ., etc., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); United States ex rel. Accardi v.

Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). The welfare claimant is entitled to have her interest in AFDC assistance considered in accordance with statutory criteria and safeguards. But even beyond that, her interest in receiving welfare assistance falls within the spectrum of interests entitled to the protection of procedural fairness afforded by the due process clause of the fourteenth amendment. Note, Federal Judicial Review of State Welfare Practices, 67 Col.L.Rev. 84, 110 (1967). Cf. Flemming v. Nestor, supra.

As always, in reaching the crucial issue, it is important to determine what is not involved. It is an overstatement of the case to state simply that the AFDC payments were terminated without a prior hearing. The stance taken by the parties in their dispute over the right to possession of the OASDI payment in behalf of Georgianna tends to distort the issue. The form of the statement by the plaintiff is not controlling. The substance of her case is that upon informing the Welfare Department of her possession of the check as representative payee for Georgianna and her refusal to turn it over to the Welfare Department at its request, the Commissioner determined that so long as the $334.10 was available to her to provide for the needs of herself and family at the pre-determined rate of assistance benefits, such benefits would be withheld. From her standpoint, if she had turned the check over to the possession of the Welfare Department, as requested, there would have been no suspension in the payments of welfare assistance for her and her children. Viewed in this context, without passing on the merits of the substantive question, the most that was at stake was who was entitled to possession of the OASDI check pending resolution of the question whether it was available for use as assistance for the family.

No case has held that a hearing must be held prior to an administrative order to temporarily suspend the payment of welfare assistance. Nor is there any

broad constitutional rule that a hearing must invariably precede every administrative action. The contention here is not original. Fundamentally the same argument was asserted in Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), where a transferee of a taxpayer challenged the power of the Commissioner of Internal Revenue. As put forward in *Phillips* at 593–594, at 610 of 51 S.Ct.:

"The contention mainly urged is that the summary procedure permitted by the section violates the Constitution because it does not provide for a judicial determination of the transferee's liability at the outset. The argument is that such liability (except where a lien had attached before the transfer) is dependent upon questions of law and fact which have heretofore been adjudicated by courts; that to confer upon the Commissioner power to determine these questions in the first instance, offends against the principle of separation of powers; and that the inherent denial of due process is not saved by the provisions for deferred review in a suit to recover taxes paid, or, in the alternative, for an immediate appeal to the Board of Tax Appeals with the right to review its determination in the courts, because there are limitations and conditions in either method of judicial review."

Speaking for a unanimous Court, Mr. Justice Brandeis squarely rejected the contention that there was a denial of due process, at 596–597, at 611 of 51 S.Ct.:

"Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate."

By way of analogy the Court in *Phillips* noted that "at any time, the United States may acquire property by eminent domain, without paying, or determining the amount of the compensation before the taking." 283 U.S. at 597, 51 S.Ct. at 611.

So also a state may take property first and later hold a hearing to determine just compensation. Crozier v. Fried. Krupp Aktiengesellschadt, 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771 (1912); Sweet v. Rechel, 159 U.S. 380, 16 S.Ct. 43, 40 L. Ed. 188 (1895).

Of equal parity as logical analogies are the forfeiture cases, where the government may first take property into its possession and put the owner to proof of his title before he can get it back. These have been held uniformly not to deny constitutional due process. E. g., United States v. Herzfeld, 271 F.Supp. 185 (S.D.N.Y.1967) (state law); The Marion Phillis, 36 F.2d 688 (2d Cir. 1929) (federal law). See 19 U.S.C.A. § 1615 and notes thereunder.

The widely used statutory process of attachment, by which a private citizen in a controversy with another over private matters may take possession of a defendant's property in advance as security for a judgment which he may not ultimately be successful in obtaining has long been sanctioned as comporting with due process. See Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837, 17 A.L.R. 873 (1921).

Even where personal liberty is at stake it is not an immutable requirement that one shall have a hearing in advance of its deprivation, e. g. a prospective criminal defendant has no constitutional right to have notice of or be present at a grand jury hearing. United States ex rel. McCann v. Thompson, 144 F.2d 604, 605–606 (2d Cir. 1944); United States v. Elksnis, 259 F.Supp. 236 (S.D.N.Y.1966). And one allegedly afflicted with certain mental deficiencies may be committed to an institution on the basis of an ex parte determination, provided a later fair hearing to test that determination is afforded. In re Coates, 9 N.Y.2d 242, 213 N.Y.S.2d 74, 173 N.E. 2d 797, appeal dismissed sub nom. Coates v. Walters, 368 U.S. 34, 82 S.Ct. 147, 7 L.Ed.2d 91 (1961).

Considered in the light of the particular circumstances of the case at hand,

the argument that the action of the Commissioner in temporarily suspending welfare assistance payments imposed such an irremediable hardship upon her as to make the delay in the hearing so unfair [2] as to be unconstitutional seems artificial.

> "[D]ue process deals with matters of substance and is not to be trivialized by formal objections that have no substantial bearing on the rights of the parties." Market St. Ry. v. Railroad Comm'n of California, 324 U.S. 548, 562, 65 S.Ct. 770, 777, 89 L.Ed. 1171 (1945).

She was far from being hopelessly compromised in an intolerable position. By relinquishing possession of the OASDI check, the core question of whether she was entitled to retain the funds for Georgianna's present and future needs remained open for determination under adequate safeguards.[3]

■ The application of the foregoing principles so clearly establishes the unsubstantiality of the constitutional claim as to require the denial of her request to convene a three-judge district court. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Bell v. Waterfront Comm'n of N. Y. Harbor, 279 F.2d 853, 857–858 (2d Cir. 1960).

## The Remaining Claims

After stripping the "due process" claim from the complaint, two substantive claims remain. The first is that in treating the OASDI lump sum payment as income, the Commissioner traduced both federal and state laws. The second one involves only state law.

■ OASDI benefits may be considered as income under both the federal and state statutes and regulations in determining eligibility for AFDC welfare assistance. See IV Federal Social Security Handbook § 3120; 1 Conn.State Welfare Manual § 335. Whether OASDI payments made to another for the use and benefit of a minor beneficiary may be applied to the uses of the family unit receiving AFDC payments may present a task of reconciling state regulations, 1 Conn.State Welfare Manual §§ 323, 335 and 386B, with the federal statute, 42 U.S.C. § 407, and the regulations thereunder: HEW, OASDI Reg. § 404.1603. It may be that a conflict may be found lurking in the welter of federal regulations.[4] If so, the state courts would be obliged to enforce the federal right. See Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967, 172 A.L.R. 225 (1947).

■ The remaining claim that the Welfare Department was not entitled to continue to receive and retain support payments in behalf of Carolyn being made into the Domestic Relations Division of the Circuit Court by her father during the period when AFDC payments were temporarily suspended is completely without any federal coloration. See Conn.Gen.Stats.Ann. §§ 17–323a, 17–323b (as amended 1967); § 52–442b (1961 Supp.).

---

2. As Mr. Justice Black has pointed out: "There is a strong emotional appeal in the words 'fair play,' 'justice,' and 'reasonableness.' But they were not chosen by those who wrote the original Constitution or the Fourteenth Amendment as a measuring rod for this Court to use in invalidating State or Federal laws passed by elected legislative representatives." International Shoe Co. v. State of Washington, 326 U.S. 310, 325, 66 S.Ct. 154, 162, 90 L.Ed. 95, 161 A.L.R. 1057 (1945). But see Note, Withdrawal of Public Welfare: The Right to a Prior Hearing, 76 Yale L.J. 1234 (1967).

3. Of course, perceptions of administrators in such matters are not always accurate, but the view that it was not the legislative intent to provide two separate governmental benefits to alleviate one set of needs was not an invidious reading of the relevant statutes. If the Commissioner overreached his authority under the terms of the statute the plaintiff has a right to seek correction through judicial review under Conn.Gen.Stats.Ann. § 17–2b.

4. A similar case was expeditiously and authoritatively resolved upon an exchange of letters when a ruling was sought from a HEW Regional Office. Matter of Frye, 13 Welfare Law Bull. 11 (June 1968).

*Jurisdiction over Remaining Claims*

Having determined that the claim of denial of constitutional due process is so unsubstantial as to preclude the convention of a three-judge district court search must be made elsewhere for a ground of federal jurisdiction.

While the plaintiff's contention that 42 U.S.C. § 407 expressly or by clear inference supervened the state's power to apply the lump sum OASDI payment to diminish its AFDC payments may sufficiently assert a question which "arises under" federal law within the meaning of 28 U.S.C. § 1331(a); cf. T. B. Harms Co. v. Eliscu, 339 F.2d 823, 826–828 (2d Cir. 1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965), it is obvious that her claim for $334.10 does not meet the amount required by the statute to be in controversy to confer jurisdiction upon this court.[5]

The argument is made that because the claim is brought under 42 U.S.C. § 1983, jurisdiction may be founded on 28 U.S.C. § 1343(3),[6] which contains no requirement for an amount in controversy. See Note, Federal Judicial Review of State Welfare Practices, 67 Col. L.Rev. 84 (1967).

This ground of jurisdiction was held properly relied upon recently in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L. Ed.2d 1118 (1968). Alabama's man-in-the-house regulation denying AFDC payments to the children of a mother (who "cohabits" in or outside her home with any single or able bodied man) was challenged as being inconsistent with the equal protection clause and the Social Security Act. Expressly noting that it did not reach the constitutional issue, 392 U.S. at 313, 333, 88 S.Ct. 2128, 2141,[7] the Supreme Court decided that the state's regulation was "invalid because it defines 'parent' in a manner that is inconsistent with § 406(a) of the Social Security Act." 392 U.S. at 333, 88 S.Ct. at 2141.

Lest too much be read into its holding that jurisdiction was conferred upon the District Court, the Supreme Court discriminately noted:

"The decision we announce today holds Alabama's substitute father regulation invalid as inconsistent with Subchapter IV of the Social Security Act. We intimate no views as to whether and under what circumstances suits challenging AFDC provisions *only on the ground that they are inconsistent with the federal statutes may be brought in federal courts.*" 392 U.S. at 312 n. 3, 88 S.Ct. at 2131 (Emphasis added).

Thus King v. Smith is not to be read as holding that jurisdiction over a claim which a federal court might have the power to consider only because it is pendent to another over which the court does have jurisdiction may be bootstrapped into a federal court by coupling it to an insubstantial constitutional claim. In *King* there was a substantial constitutional claim under the equal protection clause—that Alabama's laws and regulations unjustifiably imposed inequalities among the groups it affected—the kind of claim that a District Court would have the power to entertain under 28 U.S.C. § 1343(3).

---

5. 28 U.S.C. § 1331(a): "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

6. 28 U.S.C. § 1343(3): "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * * (3) "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

7. Cf. Harmon v. Brucker, 355 U.S. 579, 581, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1957). "In keeping with our duty to avoid deciding constitutional questions presented unless essential to proper disposition of a case, we look first to petitioners' non-constitutional claim that respondent acted in excess of powers granted to him by Congress."

Furthermore, in *King* the statutory claim decided was connected to an equal protection constitutional claim of sufficient substantiality to require the convention of a three-judge district court, but left undecided only because of the policy of avoiding decision of a federal constitutional question. Siler v. Louisville & Nashville R.R., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).[8] On the contrary, in the case at hand the claim that Connecticut's regulations are inconsistent with the federal statute is connected to an allegation of a constitutional claim which as "set forth in the pleading is plainly unsubstantial." See Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933). It would overvalue the use of such an allegation to treat it as a sufficient peg on which to hang even a discretionary right, see United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to exercise jurisdiction over the statutory claim presented here.

A final point remains. Section 1343(3) does not by itself confer jurisdiction over this statutory claim. The plaintiff has not been deprived of a "right * * * secured by the Constitution of the United States." Nor, under the alternative base in § 1343(3), does the "Act of Congress" in issue provide "for equal rights of citizens * * *." Mere inconsistency between a state and federal statute may raise a federal question, but in this case that question does not concern "equal rights." Title 28 U.S.C. § 1343(3) is not a subsection of 42 U.S.C. §§ 1983 and 1985. See Hague v. CIO, 307 U.S. 496, 529–530, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Note, The Proper Scope of the Civil Rights Acts, 66 Harv.L.Rev. 1285–90 (1953).

For the foregoing reasons, I conclude that no requisite showing of jurisdiction to entertain the plaintiff's claim has been made. Accordingly, the case is dismissed on that ground.

So ordered.

---

8. In Siler v. Louisville & Nashville R.R., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753, this policy was extended to permit a federal court to consider state law issues which were unnecessary to a decision of the federal claim and to base its decision solely on state law in order to avoid ruling on a constitutional question.