■ WILLIAM F. PALMER, Appellant, v NEW YORK STATE DEPARTMENT OF MENTAL HYGIENE et al., Respondents.—In a proceeding, *inter alia,* to vacate an alleged 1953 certification by the Department of Mental Hygiene that petitioner was an insane person, the appeal is from an order of the Supreme Court, Kings County, dated September 17, 1976, which denied the application without a hearing. Order affirmed, without costs or disbursements, on the memorandum decision of Mr. Justice Monteleone at Special Term. Cohalan, J. P., Titone and Hawkins, JJ., concur; Suozzi, J., dissents and votes to reverse the order and remand the proceeding to the Special Term for a hearing on the allegations raised in the petition, with the following memorandum: By affirming the order appealed from, which, *inter alia,* denied petitioner-appellant's request for a hearing and a jury trial on the propriety of a 1953 certification which had him committed as an insane person, the majority forever precludes him from proving that he was illegally certified insane. This result is contrary to the intent of the statute (see Mental Hygiene Law, § 31.35) and the holding of appropriate case law (see *Matter of Coates,* 8 AD2d 444, affd 9 NY2d 242). Petitioner instituted this proceeding to annul an order dated August 6, 1953 which certified him as a mentally ill person. In the alternative, he sought a hearing and jury trial pursuant to section 31.35 of the Mental Hygiene Law (former Mental Hygiene Law, § 76, which was renum § 74 by L 1969, ch 738, § 6) to review the propriety of said certification and, upon a favorable ruling on that issue, an order directing that all records accompanying his certification be expunged. In his supporting affidavit, petitioner alleged that he was never given notice of the certification and consequently his time to obtain a review of the certification under section 31.35 had not begun to run (see *Matter of Coates, supra).* In opposition to the application, the Attorney-General argued that the application had been rendered moot by petitioner's discharge on January 13, 1955 and that no authority existed to expunge the certification. The Special Term held that petitioner had not established by competent proof that he was ever certified a mentally insane person. In addition, the Special Term held that the application would have to be denied in any event since (1) the absence of notice of the certification had no effect on the validity of the order of certification, (2) the application was moot due to petitioner's discharge from the hospital and (3) no authority existed for expunging any illegal or improper certification of insanity. I disagree with the conclusion reached by the Special Term. A brief review of the statutory scheme is in order. Section 74 of the Mental Hygiene Law, as it read at the time of petitioner's alleged commitment (the section was repealed by L 1969, ch 738, § 6), provided, *inter alia,* that an alleged mentally ill person could be certified to and confined in an institution upon an order of a Judge upon the certificate of two examining physicians accompanied by a petition therefor. Upon finding that the person required care and treatment, the Judge could

then order the patient's commitment for a period not exceeding 60 days for the purpose of observation and treatment. That section further provided that at any time prior to the expiration of 60 days from the date of the commitment order, certain officials of the institution in which the person was confined could file a certificate in the office of the county clerk that the inmate needed continued care and treatment. Upon the filing of such a certificate, the original judicial order of commitment would become a final order and the patient would remain in the institution until his discharge in accordance with the statute. Former section 76 of the Mental Hygiene Law provided that if the person certified, or any relative or friend on his behalf, was dissatisfied with the final order, he could obtain a rehearing and review through a jury trial on the issue of sanity within 30 days after the making of the final order. In *Coates (supra)*, the petitioner was committed to a State hospital on April 17, 1957 by an order of a County Judge. That order expressly provided that it would become final upon the filing of the certificate by the hospital authorities at any time prior to 60 days from the date of the order. A certificate was filed by the hospital about 16 days after the date of the Judge's order. Accordingly, under the statute, the patient in *Coates* had 30 days from the filing of the certificate—which in *Coates* was 46 days from the County Judge's order—to petition for a rehearing and a jury trial as provided in the Mental Hygiene Law. Petitioner brought the proceeding 60 days after the Judge's original commitment order and, in the petition, also acknowledged that she had been released from the hospital 11 days after the certificate had been filed. The Special Term dismissed the proceeding as untimely, holding that the 30-day period to bring the proceeding commenced to run on the date of filing of the certificate and that the petition was, therefore, 14 days late. The Appellate Division in *Coates* reversed. The court noted that the statute allowed the hospital to file a certificate at any time during the 60-day period, but did not provide for any notice to the patient of the filing of the certificate. Under these circumstances, the patient was placed in danger of unknowingly waiving his or her right to a jury trial. In order to circumvent this problem, the court held that inasmuch as the hospital authorities had a full period of 60 days under the statute to file a certificate without notice, the 30-day period to institute judicial review would not commence until the expiration of the 60 days from the date of the Judge's commitment order. In short, the court in *Coates* held that petitioner therein, and others similarly situated, had 90 days from the date of the Judge's commitment order to bring a proceeding for review under former section 76 of the Mental Hygiene Law. Since petitioner in *Coates* had initiated her proceeding within that 90-day period, her request for a jury trial was granted. The Court of Appeals affirmed in *Coates*, but went even further in protecting the inmate under former section 76 of the Mental Hygiene Law. The court disapproved of the Appellate Division's solution of commencing the running of the 30-day Statute of Limitations from the expiration of the 60-day period following the original judicial commitment order. The court stated *(Matter of Coates*, 9 NY2d 242, 252, *supra)*: "The court did not require actual notice, nor did it suggest how the confined person would ever become aware that his time to demand a jury trial had commenced to run. To imply such notice from the mere provisions of the statute by virtue of the presumption that the confined person knows the law is, in our judgment, highly unrealistic. Moreover, we believe that such implied or constructive 'notice' falls short of even the 'mere gesture' which was held to be insufficient in the *Mullane* case *[Mullane v Central Hanover Trust Co.,* 339 US 306] *(supra)*." The Court of Appeals further

stated (p 252): "Nothing short of *actual* personal service of notice upon the allegedly ill person can suffice to commence the running of the 30-day period" (emphasis in original). Clearly, if petitioner is correct in his allegation that he never received notice of his certification—and the Attorney-General in his brief states that due to the complete absence of any records of petitioner's certification and hospitalization, he cannot controvert petitioner's statement of facts—then under the ruling in *Coates,* his time to seek review of the certification has not run. To deny petitioner the opportunity to prove his case would be grossly unjust since the effect thereof would be to leave the stigma of a mental disease on his record. In his affidavit, petitioner alleges that his examination of the appropriate records at the county clerk's office in Brooklyn reveals that he was certified a mentally insane person on August 6, 1953 by the Brooklyn State Hospital. It will be petitioner's burden to prove this certification and its impropriety. However, that is a matter of proof and not a reason for dismissal of the proceeding as a matter of law. The respondents next contend that petitioner's discharge from Brooklyn State Hospital in 1955 renders this proceeding moot. I disagree. In *Coates* the petitioner had been released from the hospital on "convalescent status" *(Matter of Coates,* 8 AD2d 444, 446, *supra)* at the time of the proceeding and had been completely discharged at the time the appeal was heard in the Appellate Division. In denying a motion to dismiss the appeal, the Appellate Division stated *(Matter of Coates, supra,* p 452): "It is recognized that an appellate court usually declines to decide questions which have become moot or academic because of a change in circumstances affecting the case after the decision below. *(Matter of Adirondack League Club v. Black Riv. Regulating Dist.,* 301 N. Y. 219, 222; *Delavan v. New York, New Haven & Hartford R.R. Co.,* 216 N. Y. 359, 362.) On occasion appellate courts refrain from taking such action where 'the question is one of major importance and, because it will arise again and again, one that invites immediate decision.' *(Matter of Rosenbluth v. Finkelstein,* 300 N. Y. 402, 404; *Matter of Glenram Wine & Liq. Corp. v. O'Connell,* 295 N. Y. 336, 340.) We find the issues presented in these appeals to fall within this exception to the general rule." Finally, it is argued that the court has no authority to order the expungement and destruction of records even if petitioner prevails in proving that he was illegally certified as insane. I disagree. The court in *Coates* (p 452) stated that "Although now discharged this adjudication if incorrect should not permanently stand upon the record." In *Matter of Henry v Looney* (65 Misc 2d 759) a 15-year-old boy was arrested for attempted burglary. The charges were later withdrawn "because it was conceded that no offense had been committed and the entire affair was a mistake" (see *Matter of Richard S. v City of New York,* 32 NY2d 592, 595). Upon application of the boy and his parents, Judge Wachtler, then sitting in Supreme Court, and now an Associate Judge of the Court of Appeals, directed that the surname of the boy and his parents be obliterated from all records and documents reflecting the boy's arrest. In *Henry,* objection was made by the respondents therein that there was no statutory authorization for relief. Judge Wachtler conceded that "the subject matter of [the] proceeding is more susceptible to comprehensive legislative treatment than judicial disposition on a case by case basis" *(Matter of Henry v Looney, supra,* p 761), but nevertheless granted the relief requested on the facts of that case, stressing the potential harm to the infant if the arrest record was not expunged, and the absence of any benefit or social purpose in preserving the arrest record. The certification of this petitioner as insane, no matter how long ago, remains a potential barrier to any

contemplated employment advancement. If petitioner can prove the impropriety of that certification, he should also be entitled to an order directing the destruction and expungement of the relevant records (see *Matter of Coates, supra; Matter of Henry v Looney, supra*).